SAVANNAH, JANUARY TERM, 1861.  743

King and Wife et al. vs. Dunham et al.

## KING AND WIFE *et al. vs.* DUNHAM *et al.*

1. There being in a marriage settlement after the termination of two estates for life, and upon failure of issue of the marriage, a limitation over "to the heirs of S. A. (the grantor")," *Held*, that the remaindermen took *as heirs*, not as purchasers.

2. The marriage settlement having been in the lives of the parties to it, re-formed, by consent, between themselves and the Trustees, so as to vest the property absolutely in the husband upon the death of the wife, without issue of the marriage surviving her, *Held*, that the decree so reforming the marriage settlement, was good against such persons as would have been heirs at Law of the settlor, had she died at the time the settlement was executed, even though they were not parties to the bill by which the settlement was reformed.

In Equity, in Liberty Superior Court. Decision on demurrer made by Judge FLEMING.

Thomas King and his wife Susan King, Ann S. Anderson, and her children, George Anderson, Richard Anderson and Mary Anderson, who being minors sued by their mother; the said Ann S. Anderson, as their next friend, filed their bill in equity in the Superior Court of Liberty county, in which it is alleged:

That Sarah A. Anderson, the sister of one of the defendants, Joseph A. Anderson, and of the said Susan King, and the aunt of the said George, Richard and Mary Anderson, which last named three, are the children of William Anderson, deceased, who was the brother of the said Sarah Anderson, being possessed of a considerable property, real and personal, and being about to enter into a matrimonial alliance with one Thomas K. Dunham, on the 19th day of December, 1850, with the knowledge and consent of the said Thomas K. Dunham, he being a party thereto, executed a deed of marriage settlement as follows, to wit:

STATE OF GEORGIA, LIBERTY COUNTY:

This indenture, made this nineteenth day of December, eighteen hundred and fifty, between Sarah Anderson, of Walthourville, in the State of Georgia, of the first part, and Dr. Thomas K. Dunham, of Camden county, in said State of the second part, and Joseph A. Anderson and Charles B. Jones, of said county and State, of the third part: Whereas, the

744 SUPREME COURT OF GEORGIA.

King and Wife et al. vs. Dunham et al.

said Sarah Anderson is now lawfully seized and possessed of the following real estate, to wit: an undivided portion of the plantation known as the estate of William Anderson, lying in said county and State, for boundaries of which reference is made to the plat thereof, and of sundry other tracts of pine land lying in the said county and State, and the following negro slaves, to wit: Joe, Ned, Agrippa, Pompey, Sim, Sam, (Carpenter), Tamor, Patience, Mary, Ben, Prime and Matilda, twelve in number; and whereas, the said Sarah Anderson may hereafter become entitled and possessed of other property, real and personal; and whereas a marriage is intended, by God's permission, shortly to be had and solemnized between the said Sarah Anderson and Thomas K. Dunham.

Now, this indenture witnesseth, that the said Sarah Anderson, for, and in consideration of the said intended marriage, and of the sum of five dollars to her in hand paid by the said Joseph A. Anderson and Charles B. Jones, the receipt whereof is hereby acknowledged, and by and with the assent and approbation of the said Thomas K. Dunham, her intended husband, hath granted, bargained, sold and released, and by these presents doth grant, bargain, sell and release unto the said Joseph A. Anderson and Charles B. Jones and the survivor of them, and the executors, administrators and assigns of such survivor, all that above described estate, both real and personal, together with all and singular the hereditaments, rights, members and appurtenances that may in anywise belong or appertain to the same, and all the estate, right, title and interest whatever, in law or equity, of the said Sarah Anderson, and also the negro slaves above named, with the issue and future increase of the female slaves.

To have and to hold the said lands and slaves and all other premises above bargained and conveyed unto the said Joseph A. Anderson and Charles B. Jones, and the survivor of them, and the heirs, executors, administrators and assigns of such survivor, in trust to, for and upon the following uses, trusts and conditions, that is to say: In trust to the only proper use, benefit and behoof of the said Sarah Anderson and Dr. Thomas K. Dunham, but not in anywise subject to the debts of the said Thomas K. Dunham, during their natural lives, and the natural life of the survivor of them, and from and after the death of the survivor of them, then in trust for the use and benefit of the issue of the said marriage, his, her

or their heirs and assigns, if any such issue there be, and in default of such issue, then in trust for the heirs of said Sarah Anderson, the above property reverting back after the death of the survivor to the heirs of the said Anderson, their heirs, executors, administrators and assigns and not to the heirs of the said Thomas K. Dunham.

And the said Thomas K. Dunham, for himself, his heirs, executors, administrators and assigns, doth covenant, promise, grant and agree to, and with the said Joseph A. Anderson and Charles B. Jones, and the survivor of them, and with the executors, administrators and assigns of such survivor, that any and all property and estate, real or personal, which may fall or come to the said Sarah Anderson during her coverture, shall be, notwithstanding her coverture, held to, for and upon the uses, trusts, above expressed, and it is mutually agreed by and between the parties to these presents, that it shall and may be lawful, at any time hereafter, for the said Joseph A. Anderson and Charles B. Jones, or the survivor of them, to grant, bargain and sell, any part or portion of the property, real and personal, above settled and assured, they, the said Sarah and Thomas K. Dunham, or the survivor of them requesting the same in writing, the proceeds of such sale to be invested in other property, to be held on the same trusts and conditions as are hereinbefore expressed.

In witness whereof, the said parties have hereunto set their hands and seals, the day and year above written.

S. A. ANDERSON,      L. S.
THOS. K. DUNHAM,  L. S.
JOS. A. ANDERSON,   L. S.
In presence of        CHARLES B. JONES,  L. S.
G. Troup Maxwell,
A. M. Jones.

That said deed, after being duly proved, was recorded in the office of the clerk of the Superior Court of Liberty county, on the 10th of February, 1851; that said marriage was duly solemnized, and the said Sarah and Thomas K. lived together as man and wife, until the 22d day of April, 1852, when the said Sarah departed this life, without ever having had issue, leaving the said Thomas K. Dunham, her survivor; that the health of the said Sarah A., during her married life was very much impaired, and became more and more feeble up to the time of her death; that on the 10th day of January,

1852, when it had become most manifest, that the said Sarah A., from her rapidly declining health could not long survive, and that there was no probability of issue of the marriage, she was prevailed on by her husband, the said Thomas K. Dunham, to consent to a modification of the terms of said deed of marriage settlement, and to sign a written statement of the proposals for such modification, and to procure her trustees, who were unwilling to oppose her application, in her feeble state of health, to sign the same, of which the following is a copy, that is to say:

In the case of Dr. Thomas K. Dunham's marriage settlement, it is proposed to modify the limitation of the deed according to the original design of the parties, so that the use of the property shall be in D. and Mrs. Dunham during their natural life, and after the death of Dr. Dunham (if that should occur first), then for the use of Mrs. Dunham during her natural life, and after her death, then to the child or children of the marriage. In case of the death of Mrs. Dunham first, leaving a child or children, then in trust for Dr. Dunham's use during his life, and after his death, then to such child or children. If no children at the time of her death, then to Dunham absolutely, if he be the survivor, but if he be not the survivor, and there are no children at his death, then to Mrs. Dunham absolutely to dispose of as she pleases.

We, the orignal parties to said marriage settlement, agree hereby to the modifications above proposed, and consent that an amicable bill be filed for such purpose in Liberty Superior Court, and that we be made parties thereto, or such other course be pursued as will effect such object.

SARAH A. DUNHAM,<br>THOMAS K. DUNHAM,<br>JAS. A. ANDERSON,<br>C. B. JONES.

10th January, 1852.

That the April Term, 1852, of the Superior Court of Liberty, a bill in equity was filed in the name of the said Sarah A. and Thomas K. Dunham, to reform the said deed of marriage settlement, in accordance with the proposals contained in said statement.

That on the 20th day of April, 1852, there was a decree rendered in said case, of which the following is a copy, that is to say:

This cause came on to be heard on bill, answer and exhibits; whereupon, it is ordered, adjudged and decreed, and we, the jury, do order, adjudge and decree, that the prayer of the complainants be granted; and that the trusts of the said deed be so modified as to suit the desire of the parties, as expressed in said bill and exhibit, so that the use of the property shall be in the complainants during their natural lives, and after the death of the said Thomas K. Dunham, if that should occur first, then that said property be for the use of said Sarah A. Dunham during her natural life, and after her death, then to the child or children of the said marriage; that in case of the death of said Sarah A. Dunham first, leaving a child or children, then in trust for said Thomas K. Dunham during his life, and after his death, then to such child or children; but if no child or children at the time of her death, then to said Thomas K. Dunham absolutely, if he be the survivor, but if he be not the survivor, and there be no children at the time of his death, then to the said Sarah A. Dunham absolutely, to dispose of as she pleases.

And it is further ordered, adjudged and decreed, that a deed be prepared and that it be executed by the parties, pursuant to this decree, and that such deed stand and be considered in lieu and place of said original deed of marriage settlement.

The complainants further allege, that this decree was rendered only two days before the death of the said Sarah A., and whilst she was hopelessly ill; that there was 'no mistake nor misunderstanding in regard to the trusts of the deed of 19th December, 1850; that it was drawn in conformity with the wishes and desires of said Sarah A., and according to the instructions which she herself had given; that she read the deed and approved its trusts: that no pretence of ignorance on the part of the said Thomas K., of its nature and trusts was made for more than a year after its execution, nor until within about two months of the death of the said Sarah A., when her health was rapidly sinking, and her mind and body both weakened by disease, she was persuaded by the solicitations of the said Thomas K., to acquiesce in his desires and wishes, and to sign the instrument consenting to the modifications of the deed as proposed by him, and unduly pressed upon her in her weak and sinking condition; that the said Thomas K. Dunham survived the said Sarah A. Dunham,

and took and kept possession of the entire property so settled by the said deed of settlement, until his death, which happened on the —————— day of —————— in the year eighteen hundred and fifty ——————; that the said Thomas K. Dunham before his death, made and published his last will and testament, by which he devised and bequeathed the whole of the said settled property of his said wife, the said Sarah A., to his own relatives, heirs and next of kin, to the entire exclusion of the heirs of the said Sarah A., as provided for by the deed of settlement, of the 19th of December, 1850, and by said will appointed the defendant Henry R. Fort, executor of said will; the defendants, Ann Dunham, William Dunham, John Dunham, James Dunham, Joseph Dunham, George Dunham, —————— Crawford and his wife Jane, E. H. Hart and his wife Esther, David Dunham, Andrew J. Dunham are the heirs and next of kin of the said Thomas K. Dunham, and devisees and legatees under his said will; that since the death of the said Thomas K., the said property and estate so settled in trust, has been taken possession of by said Fort as executor as aforesaid, and by all, or some, of the other defendants, and is held and claimed as their property, under said will of Thomas K. Dunham; that the complainants and the defendant Joseph A. Anderson, are the heirs at law and next of kin of the said Sarah A. Dunham (formerly Anderson), and as such, entitled under the deed of settlement, of nineteenth of December, 1850, to the said settled property, upon the death of the said Sarah A., and Thomas K. Dunham, without issue, and that the said Charles B. Jones has departed this life; that complainants are aggrieved by the said decree, and that they ought not to be bound thereby; that said decree was improvidently granted and rendered, in what was treated as an amicable bill without consideration or regard to the interests of these complainants as remaindermen under the said deed of settlement, and that no such decree should have been pronounced or made, affecting the interests of these complainants in remainder under said deed; and that the same decree is erroneous and ought to be reversed, and for errors, do assign the error therein as followeth: First, because complainants say, and hope to maintain, that the rights and interests of these complainants under said deed of 19th of December, 1850, were such that it was not legally or equitably competent to the parties to said deed, or any

Court of law or equity to change or annul them, unless for some clearly proved mistake, accident, or fraud in its creation and execution; and secondly, because it is apparent upon the face of said bill, pleadings and exhibit which composed. all the proofs in said case that no such mistake, accident, or fraud in the procuring and execution of said deed is either alleged or was proved; thirdly, because the consent of the said Sarah A. to the proposals for modifying the trusts of said deed was procured by entreaty, and persuasion, and undue influence exerted upon her in her last illness, and but a short time before her death; fourthly, that your orator and oratrixes were no parties to said bill or proceedings, and ought not to be bound by the said decree.

The prayer of the bill is, that the decree and the proceedings had thereon, may be reviewed and reversed, and the deed of the 19th of December, 1850, may be confirmed and reestablished; that the defendants may be compelled to deliver to the complainants as heirs at law of the said Sarah, all the property settled by said deed, and account for the rents, hire and profits of the same; and that the complainants have such other relief as to the Court shall seem meet according to equity and good conscience.

To this bill, counsel for defendants set up a general demurrer, and after argument had thereon, the presiding Judge decided amongst other things—

"That under the marriage settlement between Sarah Anderson and Thomas K. Dunham, the complainants had no right in the property in dispute; that whatever interest they took in said property, was not as purchasers, but as heirs by descent; that under the facts of this case Mrs. Dunham had a perfect right so to change the deed of marriage settlement, as to give the property to her husband to the exclusion of her heirs; that although the complainants may not be bound by the decree changing the trusts of the deed, they had no interest in the proceedings, and the decree has deprived them of nothing; that the demurrer is therefore sustained and the bill dismissed."

This decision is the error alleged in the record.

E. H. BACON, and LAW, BARTOW and LOVELL, for plaintiffs in error.

750          SUPREME COURT OF GEORGIA.

King and Wife et al. vs. Dunham et al.

WILSON and HARDEN for defendants in error.

*By the Court.*—JENKINS, J., delivering the opinion.

Complainants seek by their bill to set aside a decree rendered in a former suit in chancery (which they attach as an exhibit) reforming the marriage settlement of Thomas K. Dunham and Sarah A. his wife (formerly Anderson), to which they were not parties. They claim to have had under the original settlement an interest, which was divested by the decree reforming it. They allege, that not having been parties to that suit, they are not bound by the decree, and this is undoubtedly true. But there is a preliminary question which must be determined in their favor before their right to impeach the former decree can be recognized, viz.: whether they had a vested interest under the marriage settlement anterior to its reformation. By the terms of the settlement the property was settled to the use of the parties to the marriage during their joint lives, then to the use of the survivor, then to the issue of the marriage, his, her, or their heirs and assigns, if such there be, and in default of each issue, to the *"heirs of the wife* (the property being her's), *the property reverting back after the death of the survivor to the heirs of Sarah Anderson, their heirs, executors, adminstrators and assigns, and not the heirs of the said Thomas K. Dunham."* It is under the last clause that complainants claim to take as purchasers. If they did so take upon the execution of the marriage settlement, the subsequent decree reforming it, did infringe their vested rights, and they are entitled to be heard now, in opposition to the validity of that decree, but not otherwise.

After the termination of the life-estates created by the settlement, and on failure of issue of the marriage, the remainder was limited to the heirs of the grantor. To enable the plaintiffs in error to take as purchasers these words, "the heirs of Sarah Anderson" must appear to be descriptive of certain persons to the exclusion of all others. Had the grantor used the words, "to the heirs of said Sarah A. *now living,"* or "to such persons as would be the heirs of the said Sarah A. *were she now dead,"* then the words would be *descriptio personarum;* and those answering that description would have taken as purchasers. There must be some words

amounting to a description of a person, or of persons, or something in the context clearly indicating that the remainder, so created, shall vest. *1st. Fearn on Rem's* 208. Where the word *"heirs"* only is used, it must be taken in its most general sense, as referring to those persons who, upon the death of the grantor (in this case), would be her heirs. *"Nemo est heres viventis,"* and where the term is used in this general sense, the identification of those to take upon the happening of the contingency, is necessarily postponed to the death of that person, as whose heirs they are to take. In this view, had the plaintiffs .in error died before the grantor, they of course could not have· taken, nor could their heirs through them.

Again, had the grantor survived her husband, Dunham, (there being no children of this marriage), and then married again, not having survived her second husband, had then died, leaving children of the second marriage, and the plaintiffs in error surviving her, the latter could not have taken, because the children of the second marriage having intervened, would have been her heirs to their exclusion. Then it is clear that no interest vested in them.

But to escape this conclusion, we are called upon to hold that the words "heirs of Sarah A. Anderson" in this deed, mean such persons as would be her heirs should she die that instant—mean heirs apparent or presumptive. If there be any law for such construction we are not aware of it.

In our view of this case, there is no necessity to resort to the rule in Shelly's case, which has been pressed upon our consideration; and consequently, the very able and learned argument of counsel for plaintiffs in error, in reply, to prove that it can not be brought within that rule does not control the case. These arguments have been highly entertaining and instructive, but we place the case upon another position assumed by counsel for defendants in error, viz.: *"A limitation to the heirs of the grantor will continue in himself as the reversion in fee."*

*Fearn on Remainders,* 50 *and* 51; *Preston on Estates,* 291; 1 *P. Williams,* 359; 2d *Blackstone's Com.* 241—*note.*

Thus considered, the reversion took effect in the grantor, and upon her death the estate would have passed to such persons as then became her heirs at law; but as it could not be known who those persons would be until her death, no person

took a vested interest during her life, no person could take, under that clause, any interest whatever, vested, or contingent, as purchasers.

Had that clause been omitted entirely upon the happening of the specified contingency, the estate would have reverted, and would have passed to those whose heirship to the grantor was established by her death.

The deed does no more than specify the course to be taken by the estate, which it would have taken by law, without the specification.

In this view, Mrs. Dunham had a perfect right to consent to the proposed reformation of the settlement; and the decree, making that reformation with her consent, divested no pre-existing rights.

We affirm the judgment of the Court sustaining the demurrer.

## JUDGMENT.

Whereupon, it is adjudged by the Court, that the judgment of the Court below be affirmed.