Mr. Justice Cox,
after stating the case substantially as above, delivered the opinion of the Court:
The object of the deed of settlement is declared in the recital to be “in the prospect and in consideration of said intended marriage, and for making such provision and settlement-upon and for said party of the second part, and the children and issue of said marriage as hereinafter mentioned,” and it thereupon proceeds to. .provide, first, for the intended wife for life, and then, that if she should not survive the grantor but die without issue, the trustee should *142 hold for the use of the grantor, his heirs and assigns forever; but if she should survive him and die leaving issue, the trustee should hold to the use and benefit of the children of, the intended marriage, and the children of his first marriage.
If the intended wife should die without issue, after surviving him, then the whole object of the settlement would fail, and it is natural to suppose that the grantor would direct the property, in that contingency, to be held for his heirs at law, as if no such settlement had been made. Accordingly, it is provided that, in such case, it should be held for the use, benefit and behoof of his right heirs, their heirs and assigns. .But the grantor, or his draughtsman, evidently supposed that the title to the heirs, in such case, would pass by the deed, and since, according to existing law at that time, a conveyance to several, without more, would give a joint tenancy, with survivorship, he adopted the usual formula employed in such cases to prevent the survivorship, viz., the qualifying words, “as tenants in common and not as joint tenants.” If the question had been asked the grantor, whether he meant to create a tenancy in common, as distinct from a co-parcenary, he would probably have replied that he designed to avoid a joint tenancy, and to give equally among his heirs, according to the law of descent, and that he had no idea of giving his estate any direction other than that which the law gave it. And if it should appear that the legal effect of the deed of settlement was no other than that, his purpose would not be frustrated.
Let us then consider the legal effect of the deed. If one seized in fee grants a life estate to another, without more, he has left in him a reversion in fee. If he grants the life estate with remainder to himself and his heirs, he still has the reversion, and the limitation to himself, by way of remainder, is void. The result is the same if he limits the remainder directly to his heirs, instead of to himself and his heirs. The limitation to his heirs is simply void, be *143 cause he cannot convey to his heirs by deed, either immediately or by way of remainder after another estate granted for life to some one else. Nor can it make any difference that he conveys to trustees to the use of another for life, and after to the use of his heirs. It will be considered a resulting use to himself in fee, and he will have as perfect a legal reversion as if he had made a common law conveyance for life only. Thus, Fearne on Remainders, page 50, says:
“ But a limitation to the right heirs of the grantor will continue in himself as the reversion in fee. As, where a fine was levied to the use of the conusor for life,.remainder to the use of B in tail, remainder to the use of the right heirs of the conusor, it was adjudged that the limitation to the right heirs of the conusor was void, for that the old use of the fee continued in him as a reversion. So where A enfeoffed J. S. and J. N. in fee, to the use of himself for forty years, and afterwards to the use of his second son in tail male, remainder to the use. of the right heirs of A forever, it was resolved that the use limited to the right heirs of A was the old use; that it was void as a' remainder, and was merely the reversion in A.
“And where A seized in fee conveyed the lands to the use of J. and M., his wife, and of the heirs male of the body of J., and afterwards to the use of the right heirs of said A, upon a question whether the remainder limited to the use of the right heirs of A in the lands in which he had no particular estate, was in him as his reversion or vested in his heir by purchase, it was the clear resolution of the whole court that this use so limited to A’s right heirs was the old use, and continued in A as the reversion. See, also, 1 Preston on Estates, 455.
The same rule is stated in American cases. Thus, in Loring vs. Eliot, 16 Gray, 568, a bill was filed by the trustee under a marriage settlement of real and personal property, to obtain the instruction of the court on the following facts: By a deed of settlement property was conveyed in trust for *144 the settlor and her heirs, until her marriage, then to her use for life, then to transfer the property to her children, if any, and if none, then to transfer the same in like manner v/nto her heirs at lato. She died without leaving children, but meanwhile had devised her estate to strangers, and on the question whether they were entitled or the heirs at law, claiming as purchasers under the settlement (precisely the question here), the Court said the settlor had the reversion in her, in case of her death without issue, which she could lawfully dispose of by will.
In King vs. Dunham, 31 Ga., 743, a woman, in contemplation of marriage, conveyed to trustees for the use of herself and her intended husband for their lives and that of the survivor, then for the issue of the marriage, if any, and if none, then in trust for their heirs. And afterwards, there being no issue, the settlement was so modified as to give the property absolutely to the husband, on the death of the wife without issue. After the wife’s death, her heirs claimed that they had a vested -remainder by the original settlement, which could not be affected by the subsequent alteration, but the *court held otherwise. So in Harris vs. McLaren, 30 Miss., 539, one John Thurman conveyed certain negro slaves to the use of his daughter for her life, and after her death to her children, if any, and they failing, “to return to my lawful heirs.” The court said, “it is a settled maxim of the common law that a man cannot make a conveyance of real property to his heirs. Hence, it is uniformly held, that an ultimate remainder limited to the right heirs of the grantor is void, and although the fee be expressly limited away from him, it will continue in him as his old reversion and not as a remainder. The heirs will take by descent and not by purchase.” And this rule was applied to the devise of the negroes.
Nor can can it make any difference that, in addition to limiting the estate to the use of his heirs, the grantor adds a direction to convey to them. The limitation to the use of *145 the heirs, if it had any operation, would, by virtue of the statute of uses, immediately pass a legal estate. The further direction would be simply superfluous. In fact, if there were no limitation to use, but instead of that a direction to convey, that of itself would be equivalent to the former, and the estate would pass without a conveyance. That was substantially held by this court in the case of Haw vs. Brown, 1 Mac Arthur, chiefly on the authority of Poor vs. Considine, 6 Wall., 458. In Haw vs. Brown, it appeared that a testator devised his estate to a trustee upon active trusts, viz., to manage and dispose of the same for the husbanding and increase thereof while her grandsons were under age, and to apply the income, in his discretion, for their maintenance and education during minority, and, as they, respectively, came of age, to turn over and account to each one for one-half of the estate.
One of them became of age and entered into possession of his part of the estate and afterwards died without having received a deed from the trustee for the real estate, and the question was, whether the legal title was in him so as to entitle his widow to dower.
Here, there was no dry or passive trust, with a limitation to the use of the grandson, but the whole trust was an active one, including the final act of turning over the property, which would mean, as to the real estate, a conveyance. But the court held that when the active duties of the executor and trustee for the benefit of the minor were at an end, the legal seizin passed to the beneficiary, and no conveyance was necessary for that purpose.
In Poor vs. Considine, the Supreme Court said: “ Where a trust has been created, it is to be held large enough to enable the trustee to accomplish the objects of its creation. If a fee simple estate be necessary it will exist, though no words of limitation be found in the instrument by which the title passed to the trustees, and the estate created on the other hand, it is equally well settled that where no intention *146 to the contrary appears, the language used in creating the estate will be limited and restrained to the purposes of its creation, and when they are satisfied, the estate of the trustee ceases to exist and his title becomes extinct.” The same was substantially held in Loring vs. Eliot, 16 Gray, 568. See, also, the case of Tillinghast et al. vs. Coggeshall, 7 R. I., 383.
From these authorities, it is apparent that if this deed of settlement had not provided at all for the ease of the wife’s death without issue, the legal reversion after her life would have remained in the grantor, in fee simple. And if the limitation, after her death without issue, had been simply to his right heirs, without any qualification, the legal reversion would equally have been in him. And the additional direction to the trustees to convey to his right heirs would neither have added to nor taken from thé effect of the limitation to their use. It would not have created an additional trust, the execution of which was necessary to the passage of the legal title to the heirs. It would have been simply surplusage. A.nd so, in like manner, when the use is to the right heirs, as tenants in common and not as joint tenants, the direction to convey accordingly adds nothing to the effect of the limitation to use, which, if it can operate- at all, can do so without this addition. So that the remaining question is, simply, whether, where the grantor, after creating a particular estate or estates, limits the property to the use of his right heirs, which would ordinarily not create an estate in them by purchase, but would leave the reversion in himself, the effect is changed by adding the words “ as tenants in common and not as joint tenants.”
The affirmative is maintained only on the ground that such a rule obtains in the case of a devise, which is supposed to be an analogous case. A devise by one to his heirs simply, is said to be void and the heirs are said to fake by descent. But if the devisor gives a different estate from that which would descend, as where he devises to his *147 heirs an estate for life only, with remainder over, it is said to be an effective devise, passing an estate by purchase.
And the same rule is held to apply in a case where one devised to his heirs as tenants in common, on'the the ground that if there are several who could take, i. e., female heirs, they would not take by descent as tenants in common, but as co-parceners, and therefore, the devise would give a different estate from that which would pass by descent. Now, the question is, whether the rule laid down in Feme, as before stated, is to be modified in the same way, i. e., if a man limits his estate by deed, by way of remainder, to his right heirs, which would be simply void and leave the remainder in himself, to go to the heirs by descent, would the addition of the woi’ds in question change the rule and give the estate to them directly by purchase ?
It would be sufficient to say that, as -far as appears, no such case is to be found in the books.
In the next place, the two cases are entirely’different. A man’s will goes into effect after his death, when there are heirs, and when the estate goes immediately to them, either by descent or purchase. ■
The d.eed, on the other hand, operates in his life-time, and from its date, if it all, when there are no heirs. In the case of a remainder, either to the grantor and his heirs or to his right heirs, the reversion is in him and only goes to his heirs through him. Now, if the addition of the words “as tenants in common ” has any effect, one of two things must follow, viz., either that the grantor, by a deed may declare that the estate shall descend through him, to his heirs, in a different manner from that prescribed by law, which is absurd; or else, that, by the use of these qualifying words, the operation of the law, which would otherwise place the reversion in the grantor, is arrested, and he deprives himself during his life-time of all control over his inheritance.
There is no authority for either view, as far as we are *148 advised. And there seems to be very good reason for maintaining that a different rule should obtain in this case from that of a devise immediately to heirs.
The fixed interpretation of a remainder to the grantor’s heirs is, that it gives the grantee himself the same estate which the law would give him, and, therefore, his title is referred to the operation of the law. Instead of holding this estate modified by the use of the words referred to, it would seem more reasonable to hold them to be entirely inoperative, as inconsistent with the nature of that estate. And an argument from analogy in support of this view is supplied by a series of decisions now to be referred to.
It is well known that, according to the rule in Shelly’s Case, if an estate be limited to one for life, with remainder to the heirs of his body, the grantee takes an estate tail; his children take by descent from him and not by purchase from the grantor. In the cases mentioned, the limitation to the heirs of the body has been qualified by these same words, “ as tenants in common and not as joint tenants.” Thus, in Doe, d., Candler vs. Smith, 7 D. & E., 352, the limitation was to one for life, with remainder to the heirs of her body, as tenants in common and not as joint tenants. In Pierson vs. Vickers, 5 East, 548, it was to the heirs of the body, whether sons or daughters, as tenants in common* and not as joint tenants. In Jessop vs. Wright, 2 Bligh, 1, a leading case, it was to the heirs of the body lawfully issuing, share and share alike, as tenants in common, and so on, in a number of similar cases cited in 2 Jarman on Wills, 277, 209. Instead of allowing these words to qualify the estate given by the principal terms of the devise, the qualification was rejected as repugnant to the nature of the estate devised and the estates held to be descendible to the heirs of the body generally.
The parallel may be stated thus: Where an estate is devised by way of remainder to the heirs of the body of a tenant for life taking under the same instrument, the law *149 decrees the estate to be in the life-tenant and to go to his children by descent, notwithstanding the limitation to them as tenants in common.
So, where the grantor of a life estate gives a remainder to his own heirs, the law decrees it to mean a remainder to himself and his heirs and will declare the fee to be in the grantor, though as a reversion, notwithstanding the limitation to the heirs as tenants in common.
In both cases, the apparent intent of the limitation is to pass an estate by purchase to heirs. In both cases it is overruled by the law.
The result of these considerations is, that the deed of settlement left the fee simple in Mr. Owen and capable of being devised by him.
It is not denied that if this was the case, it was passed by his subsequent will as a part of the residue of his estate.
As this is decisive of the present case, it is unnecessary to discuss the question whether, if these words “ as tenants in common and not as joint tenant,” were allowed full effect, as in a will, they would really give a different estate from that which heirs would take under our act of descents, so as to justify the application of the old rule which treated them, in such case, as purchasers.
This was the question discussed in the former opinion delivered in this cause. The majority of the court are satisfied with the conclusions then announced. But inasmuch as there is a division of opinion in the court on this subject, we prefer to base our final decision of the case on the grounds that have just been declared.