## DOE, LESSEE OF POOR, *v.* CONSIDINE.

1. Though a devise to trustees "and their heirs," passes, as a general thing, the fee, yet where the purposes of a trust and the power and duties of the trustees are limited to objects terminating with lives in being,— where the duties of the trustees are wholly passive, and the trust thus perfectly dry,—the trust estate may be considered as terminating on the efflux of the lives. The language used in creating the estate will be limited to the purposes of its creation.
2. Estates in remainder vest at the earliest period possible, unless there be a clear manifestation of the intention of the testator to the contrary. And in furtherance of this principle, the expression " *upon* the decease of A., I give and devise the remainder," construed to relate to the time of the enjoyment of the estate, and not the time of the vesting in interest.
3. Where the language of a statute, read in the order of clauses as passed, presents no ambiguity, courts will not attempt by transposition of clauses, and from what it can be ingeniously argued was a general intent, to qualify, by construction, the meaning.

ERROR to the Circuit Court of the United States for the Southern District of Ohio.

* 12 Wheaton, 10.

The lessors of the plaintiff in error brought an action of ejectment in that court to recover certain real estate now here in controversy. The parties agreed upon the facts. Under the instructions given to the jury, they found for the defendants, and judgment was rendered accordingly.

The plaintiff excepted to the instructions, and this writ was prosecuted upon the ground that they were erroneous.

The facts, as agreed on, were as follows:

William Barr, Senior, died on the 15th of May, 1816, leaving a will duly admitted to probate in Hamilton County, Ohio. It was out of the will that the controversy arose.

The testator left three daughters: Mary, the wife of William Barr; Susan, the wife of John B. Enness; and Mary B., the wife of James Keys. He left also one son, John M. Barr, who, at the time of his father's death, had living, a wife, Maria Barr, and an infant daughter, Mary Jane Barr.

John M. Barr, the son of the testator, died on the 10th of August, 1820.

Mary Jane Barr, the daughter of John M. Barr, died on the 27th of November, 1821. Maria Barr, her mother, died on the 3d of August, 1860.

The sons-in-law and daughters of the testator were all dead, each one leaving children born in lawful wedlock.

The testator also left living at the time of his death four brothers and two sisters. They are all dead. Two of them left no lineal heirs.

The will contained among others the following provisions:

"I give and devise unto my sons-in-law, William Barr, James Keys, and John B. Enness, of Cincinnati aforesaid, *and to their heirs*, all and singular, that certain farm, tract or parcel of land, situate, lying, and being in the county of Hamilton, State of Ohio, which I purchased of John Cross, containing one hundred and sixty acres, to hold the same premises to them and *their heirs in trust*, (first) for the use of my son, John M. Barr, during his natural life; but, nevertheless, to permit and suffer my son, John M. Barr, to hold, use, occupy, possess, and enjoy the said farm, and to receive and take the rents and profits thereof, during his natural life. And in case my said son, John M. Barr,

should die leaving a legitimate child, or children, then, also, in trust for Maria Barr, wife of the said John M. Barr, in case she survive him, during her natural life, for the purpose of maintaining herself and the said child, or children, and educating the said children; but, nevertheless, to permit and suffer the said Maria Barr, wife of the said John M. Barr, to hold, use, occupy, possess, and enjoy the said farm, and to receive and take the rents and profits thereof, during her natural life. And *upon the decease of the said Maria Barr,* wife of the said John M. Barr, in case she survive him; if not, *then upon the decease of the said John M. Barr,* I do further give and devise the remainder of my estate in said farm unto the legitimate child, or children, of the said John M. Barr, and their heirs forever. If my said son leave but one child, as aforesaid, then I give and devise the said farm to him or her, or his or her heirs forever. But, if he leave two or more children, then I give and devise the said farm unto such children and their heirs, to be equally divided between them. But should my said son, John M. Barr, die without leaving any issue of his body, then, and in that case, I do give and devise the remainder of my estate in the said farm unto my said sons-in-law, William Barr, James Keys, and John B. Enness, and their heirs forever.

   *     *     *     *     *     *     *     *

" Also, I do further give, devise, and bequeath the remainder of my estate, both real and personal, to my sons-in-law, William Barr, James Keys, and John B. Enness."

John M. Barr having died, leaving no issue but Mary Jane Barr, and she having died in infancy, unmarried, and the life estate of her mother, Maria Barr, having terminated by the death of that person, the question was presented, In whom is vested the title to the premises in controversy?

The lessors of the plaintiffs claimed title under the three sons-in-law of the testator, or their wives, who were his daughters.

The defendants claimed through the heirs of the brothers and sisters of the testator, under the statute of descents of Ohio, of the 30th of December, 1815, which was as follows:

§ I. That when any person shall die intestate, having title to any real estate of inheritance lying and being in this State, which

title shall have come to such intestate by descent, devise, or deed of gift from an ancestor, such estate shall descend and pass in parcenary to his or her kindred, in the following course:

1. To the children of such intestate or their legal representatives.

2. If there be no children, or their legal representatives, the estate shall pass to the brothers and sisters of the intestate, who may be of the blood of the ancestor from whom the estate came, or their legal representatives, whether such brothers and sisters be of the whole or of the half blood of the intestate.

3. If there be no brothers and sisters of the intestate of the blood of the ancestor from whom the estate came, or their legal representatives, and if the estate came by deed of gift from an ancestor who may be living, the estate shall *ascend* to such ancestor.

4. If there be neither brother nor sister of the intestate of the blood of the ancestor from whom the estate came, or their legal representatives, and if the ancestor from whom the estate came be deceased, the estate shall pass to the *brothers and sisters* of the ancestor from whom the estate came, or their legal representatives; and for want of such brothers and sisters, or their legal representatives, to the brothers and sisters of the intestate of the half blood, or their legal representatives, though such brothers and sisters be not of the blood of the ancestor from whom the estate came.

5. If there be no brothers or sisters of the intestate, or their legal representatives, the estate shall pass to the next of kin to the intestate of the blood of the ancestor from whom the estate came.

The court instructed the jury—

1. That at the death of the said Mary Jane Barr, the granddaughter of the testator and daughter of said John M. Barr, she was seized of a vested remainder.

2. That at the death of the said Mary Jane Barr, her said estate in said farm descended to the brothers and sisters of the said testator then alive, and the legal representatives of such of them as were then deceased.

3. That the trust estate to the sons-in-law was only an estate *par autre vie* and terminated at the death of Maria Barr; but

whether that trust estate continued or not after her death the result is the same, for if the estate so vested in Mary Jane Barr were only an equitable estate, no recovery could be had against the parties in possession under her title, in favor of the trustees or their heirs; and in no event, except the death of John M. Barr without issue, did the will give to the sons-in-law any interest in the property in controversy, other than the temporary trust estate.

The correctness of these instructions was the matter before the court.

*Messrs. T. Ewing and H. H. Hunter, for the plaintiffs in error :*

Two controlling questions are presented, the determination of either of which, in favor of the plaintiff, must result in a reversal, namely :

*First.* Whether the devise over, of the remainder in fee, to the sons-in-law, took effect on the death of Maria Barr, in favor of their heirs, they being dead, the issue of *John M. Barr* having failed by the death of his daughter *Mary Jane*, without issue, in the lifetime of the said Maria ?

*Second.* Whether, assuming that the remainder in fee did not vest in the heirs of said sons-in-law, on the death of the said Maria, in virtue of the devise to them, the said heirs-at-law, being also heirs-at-law of their deceased mothers—the daughters of the testator—did not *inherit* the said remainder under the statute of descents, from the said *Mary Jane*, as *her next of kin, of the blood of the testator*, the ancestor, from whom the estate came ?

*A legal estate in fee* passed to the trustees, and continued in them during the life of John M. Barr, and during the life of his wife—each of them holding only *an equitable use* during their respective lives. During the life of the father—and after his death, during the life of the mother—no *fee* vested in the issue of the marriage. If *the fee* continued in the trustees till the death of the wife, the remainder to the issue, which was *a fee* also, could not vest till that time. Two distinct fees in the same tenements, cannot, under any circumstances, be made to coexist. The remainder given is a

remainder *in fee;* it can, therefore, never vest until the *fee* given to the trustees ceases, and as *the fee* given to them must continue until both the parents die, *the fee* given to the child cannot vest until both parents are dead.

We need not inquire whether, up to the time of the termination of the life estate, under the circumstances, active duties might not have been devolved upon the trustees. There would have been, if the widow had been ousted by a wrongdoer. But be that as it may, the legal title was vested in them, in trust, and it cannot be pretended, that, so long as the life estate continued, they could have been required, by anybody interested, to convey to them the legal title.

What was the testator's intent in placing the legal title pending the estate for life, in the hands of his sons-in-law, his residuary legatees? Plainly that, if the *issue* of his son should fail in the meantime, the title should then be in the possession of those, in whose behalf was included in his will the alternative devise of the remainder.

Did the remainder devised to the child or children of John M. Barr, " *upon the decease of Maria Barr*," vest in Mary Jane and her heirs forty years before it was expressed to be devised to her?

The time of the remainder vesting could not be more distinctly and definitely fixed than it is in this will. The devisor does not say that the *issue* of John M. Barr shall come *into possession* on the decease of Maria Barr, but he says, " *upon the decease* of Maria Barr, *I give and devise the remainder.*" The estate commences at the time of the happening of the event named in the devise—that is, " *upon the decease.*" We use this term habitually in this sense. " A. inherited upon the decease of his father." A gift " *upon* " a day is not a gift forty years before the day; or a gift " *upon* " the happening of an event, a gift before the event happens.

Children and heirs, and *issue* in this devise, all mean the same thing. This is but in accordance with settled rule.*

* Gale *v.* Bennet, Ambler, 681; Wythe *v.* Thureston, Id. 555; S. C. 1 Vesey, 196; Ellicombe *v.* Gompertz, 3 Mylne & Craig, 154; Stevenson *v.*

*Issue* is the only term which will represent the will of the testator in every situation. Thus, in the trust to support and educate the *children* of John M. Barr charged on Maria Barr's life estate, grandchildren were doubtless also intended, and *issue* in its strict sense would embrace them.

Now, when is the failure of issue contemplated by the testator when he says, " Should my said son John M. Barr die without leaving any issue of his body, then and in that case I do give and devise the remainder of my estate in the said farm to my said sons-in-law, &c., and their heirs forever"— to take place? Is it at the instant of the death of John M. Barr? Is it an indefinite failure of issue? Or is it a failure of issue at the falling in of the last life estate? The last would best conform to legal rules, and also much the best to the general intent of the testator. There can be no rational object in fixing it at any other time or the happening of any other event, and the court habitually moulds adverbs of time, and phrases implying time, to meet the intent of testators, and subserve the ends of justice.* Such adverbs and such phrases *generally* relate to the taking effect in *possession*, not in *estate*, in case of a devise in remainder, so as to make it vested rather than contingent. But this adverbial rule is merely aucillary to the great rule of carrying out the intent, and where it does not aid and support *that*, it is not to be regarded. The words and phrases must be understood in their popularly accepted meaning wherever that meaning will best carry out the intent. It would be a monstrous perversion to accept and sustain a rule, no matter by whom devised, or by whom or how many adopted, the obvious effect of which would be to defeat the intention of the devisor. The rule, as it is called, that holds a remainder *vested* even by forcing the language, has its origin in a purpose to *save*, not to *defeat*, the intent of the grantor or devisor by saving the remainder from many of the accidents which destroy it

---

Evans, 10 Ohio State, 315; King *v.* Beck, 15 Id. 564; Collier *v.* Collier, 3 Id. 375; Malcolm *v.* Taylor, 2 Russell & Mylne, 416.

* Brewster *v.* Benedict, 14 Ohio, 384.

if contingent.* Yet, even in these cases, the early vesting of a remainder is not an *end*, but a *means ;* and if it do not tend to carry out and effect the true *end*—the transfer of the estate in accordance with the will of the devisor—it is not to be respected as a rule. If it tend to defeat the paramount *end*—that *end* for the effecting of which all rules were adopted —it must be rejected as an error and a mischief.

This case is subject to none of the casualties attending remote remainders against which early vesting was intended to guard. It would not be subject to them in England, being protected against them by the attendant trust estate in the sons-in-law. But destroy the effect of the phrase "*upon the decease of Maria Barr,*" and make the estate *vest* in the issue of John M. Barr one life or two lives sooner than the devisor intended, you defeat the general intent of the devisor; and the clause so construed passes the estate out of the issue of the devisor and out of his devisees, and vests it in collaterals. *Olney* v. *Hull†* is in point. In that case the devise was of the testator's lands to his wife while she remained his widow; but, in case of her death or marriage, the land *then* to be divided among his surviving sons. It was held that the devise over was to such of his sons as should be survivors at the termination of the wife's estate for life, and that the remainder was contingent upon the uncertainty which of the sons should then be living. "Until the death of the mother it was uncertain which of the sons would be alive to take?" The court treated the language used as it would be treated in the every-day business of life. It understood the devisor's plain language without resorting to cases and digests to find out what somebody else said or meant; and which, when found and applied to his devise, would have defeated the estate which he intended to create.

It will be argued that the *intent* of the devisor will be best carried out by making the remainder to the children of John M. Barr vest at once, so that the estate will pass to their heirs, inasmuch as they are the first objects of the testator's

---

* Cruise's Digest, tit. 16, chap. 6, *passim*, ch. 7, sec. 1.

† 21 Pickering, 314.

bounty, and he intended the estate for them. Certainly, he intended it for them, *if living,* and our construction takes nothing from the devise to the living issue of John M. Barr. But, when all were dead—a state of things contemplated and provided for—who were the next objects of the testator's bounty, his own descendants or collateral relatives? The devise over to the sons-in-law answers the question. The testator provides for his daughters by implication through them.

But, assuming that Mary Jane had, at the time of her death, a vested estate descendible through her under the devise from her ancestor, William Barr, to whom does that estate pass under the statute of descents?

The *first, second* and *third* classes provided for in that statute are in our case wanting; but the *next of kin* of the *intestate* of the blood of the *ancestor* from whom the estate came, living at the death of the *intestate,* were the *three daughters* of the said *ancestor;* and the plaintiff's lessors are their heirs-at-law, or claim under such heirs. They are clearly entitled to the inheritance under the *fifth* clause of the section, unless, upon a proper construction, the *brothers and sisters* of the *ancestor* from whom the estate came, are, by the *first* part of the *fourth* clause of the section, to be preferred to his *children.*

That construction is unnatural; and no other reason can be assigned in favor of it than that the *fourth* clause is inserted *before* the *fifth,* in successive order, in framing the section. This, however, is merely a mechanical arrangement. Now, although the mechanical structure of the different parts of the act is such that the successive priorities in favor of one class of legal representatives of an intestate over another, is generally indicated by the successive order observed in the structure of the act, yet that is not, upon any sound principle, such a circumstance as should have a controlling effect, or subvert a manifest intention otherwise apparent.

We would read the fourth clause before the fifth.

This arrangement will not in the least impair the effect

of each of the clauses of the section in their proper applica-
tion to facts as they may arise in cases. Full effect will be
given to the *fifth* clause by applying it to the facts of this
case; and this may be done without changing a word or a
letter, and without any transposition or displacement of any
of the clauses, or parts of the section; and without prevent-
ing the due application of the *fourth* clause to the facts of
cases in which it is properly applicable.

Here, the general intent in regard to estates in lands of
which an intestate died seized, the title to which came to
him by devise, descent, or deed of gift, from an ancestor, is,
that if the *intestate* leave no child, or brother or sister, or their
legal representatives, the estate shall pass to such of the
legal representatives of the *intestate*, according to the statu-
tory canons of descent, as are of the blood of the ancestor
from whom the estate came; and surely the general intent
in regard to the order of succession amongst those who shall
take by reason of their being of the blood of the ancestor,
must be taken to be according to the same statutory canons
of descent. No arbitrary departure from this obvious gen-
eral intent can be recognized, unless required by very ex-
press and vigorous language.

Authorities show that a mechanical order may be departed
from, to reach by construction a general intent.

In an Ohio case,* the court in construing an act of the
legislature so as to make it conform to the legislative intent,
held that a clause which was included in the *second* section
of the act, should be read as if included in the *first* section,
and as qualifying the provisions of that section. Other cases†
indicate the same superior value of a general intent over
mere mechanical structure.

If this argument be rejected, it will be only because of a
supposed conflict between the *fourth* and *fifth* clauses. The
facts of the case are fitted to the terms of the *fifth* clause, and·

---

\* The State ex rel. Commissioners of Ross Co. *v.* The Z. & M. Turnpike
Co., 16 Ohio State, 308.

† Fosdick *v.* Perrysburg, 14 Ohio State, 472; Slater *v.* Cave, 3 Id 80;
Tracy *v.* Card, 2 Id 431; Burgett *v.* Burgett, 1 Ohio, 469–79–80.

by force of that clause, abstractly considered, carried the re-
mainder in fee, on the death of *Mary Jane,* to her aunts, the
daughters of the testator, as her heirs-at-law.   Now if this
result is in any way doubtful, it can only be because the *first*
part of the *fourth* clause conflicts with the *fifth* clause, and
seems to admit of being so applied as to sustain the claim
asserted by the defendants, that the brothers and sisters of
the testator, and not his daughters, were the heirs-at-law of
said *Mary Jane.*   Admitting (what we do not concede) that
there is such conflict between the provisions, which shall give
place to the other?   The rule applicable to the construction
of conflicting statutory provisions is, that the last in order
of time, or in the order of their being set down in the enact-
ment, must take effect; the same rule, both of reason and
necessity, as in the familiar case of conflicting provisions in
a will.\*

*Messrs. Stanbery and H. H. Lincoln, contra,* argued the case
elaborately on principle and on authorities,† contending—

1. That the devise to the trustees carried the legal estate
after the death of John M. Barr, to the *cestui que trusts;* there
having been no duty imposed on the trustees which required
that estate to be longer in the trustees; a point, however,
which the counsel did not consider important; equitable es-
tates being subject as to devises and descents to the same rule
as legal ones.

2. That the remainder to Maria Jane Barr was at no time
a *contingent* remainder, she being *in esse* at the death of the
testator.

3. That it was from the first a vested remainder, but dur-
ing the life of the father was subject to be devested in the
event of her not surviving her father and by force of the de-
vise over to the sons-in-law on that event.

---

\* The Attorney-General *v.* The Governor and Company of Chelsea Water-
works, Fitzgibbon, 195; Townsend *v.* Brown, 4 Zabriskie, 80; Ham *v.* The
State, &c., 7 Blackford, 314; Doe *v.* Leicester, 2 Taunton, 109.

† For most of the authorities, relied on also in the opinion, see *infra*, pp.
475-7.

4. That at the death of the father this vested remainder became absolute—and fully vested *in right*, though postponed as to *enjoyment* until the death of the mother—but not defeasible, as before, on her death during the life of her mother.

5. That Maria Jane Barr having been vested with this remainder at the date of her death, and she dying intestate, the estate descended, under the statute of descents of 1815, and on the plain meaning of that statute if read in its declared order—the only allowable order—to the brothers and sisters of the testator.

The counsel in support of their views submitted the opinions of eminent lawyers of Ohio, including those of Messrs. Timothy Walker, J. C. Wright, Tappan Wright, Nathan Wright, and J. A. Pugh, given many years ago, on this same title, to persons as was said about to purchase, and in accordance with the view assumed by the court below. They referred also to an act of the Ohio legislature, passed in 1835,* changing the provisions of the act of 1815, which confessedly governed this case, to the extent, but no further, of carrying the estate to the children of the ancestor from whom the same came, and next after them to his brothers and sisters; that which the opposite counsel contended was already the rule under the act of 1815; but which if it had been as was now argued, would have rendered the act of 1835 useless.

Mr. Justice SWAYNE delivered the opinion of the court.

I. At the threshold of the subject before us, the inquiry arises as to the extent of the trust estate vested by the will in the three sons-in-law of the testator.

The determination of this point is not vital in the case; for whether they took the legal fee or not, and whether the estate of Mary Jane Barr was legal or equitable in its character, the result must be the same. The same rules of law apply to descents and devises of both classes of estates; and

---

* 1 Curwen, 199.

if in this case an equitable fee in remainder was vested in Máry Jane Barr at the time of her death, while the legal fee as a dry trust was held by the sons-in-law, those holding the latter title could not recover in this action against parties clothed with the equitable estate, and entitled to the entire beneficial use of the property.* But we entertain no doubt upon the subject.

The devise contains words of inheritance. It is to the trustees " *and to their heirs.*" This language, if unqualified by anything else in the clause, would pass the fee. But when we look to the purposes of the trust, and the power and duties of the trustees, we find them limited to two objects:

1. The trustees were to permit John M. Barr to enjoy the premises and receive the rents, issues and profits during his life.

2. If John M. Barr should die, leaving issue, and his wife Maria should survive him, then they were to permit her, during her life, to enjoy the possession and profits of the property.

A drier trust could not have been created. The duties of the trustees were wholly passive. They were authorized to do no act. They were simply to hold the estate committed to them until one or both the events defining the boundary of its existence had occurred. It was to subsist in any event during the life of John M. Barr, and if he died, leaving issue, and his wife survived him, it was to subsist also during her life. The executors were directed, in any event, to make an expenditure upon the property, and to take the fund from the personal estate. This duty had no connection with the trust, and its bearing upon the case is in nowise affected by the fact that the executors and trustees happened to be the same persons. Whether John M. Barr died with or without issue, the entire object of the trust was fulfilled, and its functions were exhausted when the persons for whose benefit it

---

* 4 Kent's Com. 334, 335; Brydges *v.* Brydges, 3 Vesey, Jr., 127; Cholmondeley *v.* Clinton, 2 Jacob & Walker, 148; Brydges *v.* Duchess of Chandos, 2 Vesey, Jr., 417, 426; Walton *v.* Walton, 7 Johnson's Chancer., 270; The City of Cincinnati *v.* Lessee of White, 6 Peters, 441.

was created ceased to live. "The remainder of the estate in said farm," in the language of the testator, thereupon passed according to the provisions of the will. It is neither expressed nor implied that the trust estate should exist any longer, and 'no imaginable purpose could be subserved by its longer continuance. When a trust has been created, it is to be held large enough to enable the trustee to accomplish the objects of its creation. If a fee simple estate be necessary, it will be held to exist though no words of limitation be found in the instrument by which the title was passed to the trustee, and the estate created. On the other hand, it is equally well settled that where no intention to the contrary appears, the language used in creating the estate will be limited and restrained to the purposes of its creation. And when they are satisfied, the estate of the trustee ceases to exist, and his title becomes extinct. The extent and duration of the estate are measured by the objects of its creation.

Jarman says :* "Trustees take exactly the estate which the purposes of the trust require; and the question is not whether the testator has used words of limitation, or expressions adequate to carry an estate of inheritance, but whether the exigencies of the trust demand the fee simple, or can be satisfied by any and what, less estate."

Chancellor Kent says: "The general rule is that a trust estate is not to continue beyond the period required by the purposes of the trust; and notwithstanding the devise to the trustees *and their heirs*, they take only a chattel interest where the trust does not require an estate of higher quality."†

This doctrine rests upon a solid foundation of reason and authority, irrespective of the presence or absence of the statute of uses. The consequences in this case of the absence of such a statute in Ohio, it is therefore not necessary to consider.

---

* 2 Jarman on Wills, 156.

† 4 Kent's Commentaries, 233 ; see also Webster *v.* Cooper, 14 Howard 499 ; Neilson *v.* Lagow et al., 12 Id. 110; Doe ex dem. Compere *v.* Hicks, 7 Term, 437 ; Curtis *v.* Price, 12 Vesey, Jr., 99 ; Morrant *v.* Gough, 7 Barnewall & Cresswell, 206 ; 1 Greenleaf's Cruise, 359, note.

We are of opinion that the trust estate of the sons-in-law of the testator was only an estate *par autre vie*, and that it terminated at the death of Maria Barr.

II. This brings us to the consideration of the question, what was the estate, in quantity and quality, of Mary Jane Barr at the time of her decease?

The hinge upon which turns this part of the controversy is the following language of the will:

"*And upon the decease of the said Maria Barr, wife of the said John M. Barr, in case she survive him; if not, then upon the decease of the said John M. Barr, I do further give and devise the remainder of my estate in said farm unto the legitimate child or children of the said John M. Barr, and their heirs forever.* If my said son leave but one child, as 'aforesaid, then I give the said farm to him or her, *or his or her heirs forever.* But, if he leave two or more children, then I give and devise the said farm unto such children, *and their heirs,* to be equally divided between them. *But* should my said son, John M. Barr, die without leaving any issue of his body, then, and in that case, I do give and devise *the remainder of my estate in the said farm* unto my said sons-in-law, William Barr, James Keys, and John B. Enness, *and their heirs forever.*"

The plaintiff in error claims that this clause is an executory devise, and that it gave to Mary Jane Barr a contingent estate, to take effect upon the event of her outliving both her parents, *and not otherwise;* and that as she died before her mother, no title or interest ever vested in her.

The defendants claim that upon the death of the testator, Mary Jane Barr took under the will a vested remainder, subject to open and let in after-born children, if any there were, and deferred as to the period of enjoyment until the death of the one parent who should survive the other, but liable to no other contingency, and limited by no other qualification.

This point of the will must be examined by its own light, and also in the light of the adjudications in like cases.

Considering it without the aid of authority, we have no

difficulty in coming to a conclusion as to its proper construction.

We think that it gives:

1. A legal estate *par autre vie*, to three sons-in-law in trust.

2. An equitable life estate, with the usufruct of the property to John M. Barr.

3. In case he should die, leaving issue, and his wife Maria should survive him, then an equitable estate for life to her with the usufruct of the property, for the benefit of herself and the surviving child or children of John M. Barr.

4. A vested remainder in fee simple to the child of John M. Barr, living at the time of the death of the testator, subject to open and let in the participation of after-born children, and liable to be devested by their dying before their father, but *not* liable to be defeated by any other event.

5. The devise over to the three sons-in-law was an alternate or collateral contingent remainder; and if John M. Barr had died leaving no children surviving him, that remainder would thereupon at once have vested and been converted into an absolute fee simple estate.*

In no event, except the death of John M. Barr without issue, did the will give them any interest in the property other than the temporary trust estate.

By the vesting of the remainder in Mary Jane Barr, at the death of the testator and the death of her father, this provision in behalf of the sons-in-law became as if it were not. It was utterly annulled, and could not thereafter take effect either as a contingent remainder or as an executory devise. We are satisfied the testator did not extend his vision or seek to control this property beyond the period of the death of his son, John M. Barr. With a view to that event he made two provisions equally absolute, emphatic, and final in their terms. In that respect there is no difference. The result, whether the one or the other should take

---

* Luddington v. Kime, 1 Lord Raymond, 203; Dunwoodie v. Reed, 3 Sergeant & Rawle, 452; C. J. Gibson's opinion.

effect, was to depend upon the single fact whether John M. Barr died with or without surviving children.

The language used carried the entire estate of the testator in the premises alike in both cases, and we can no more hold the word "heirs" to be the synonym of "issue," or otherwise qualify the estate intended to be given in the one case than in the other.

The theory of the counsel for the plaintiff derives no support from the principle of human nature, which not unfrequently impels a testator to transmit his property, as far as possible, in the line of his descendants. Here Barr, Keys and Enness were not of the blood of the testator. He could not but be aware that if they took the property it might pass from them, by descent or purchase, to those who were strangers to his blood, and in nowise connected with his family.

Having disposed of the property absolutely at the death of his son, he left the future, beyond that boundary, with its undeveloped phases, whatever they might be, to take care of itself.

III. We will now examine the case in the light of principle and authority.

A vested remainder is where a *present* interest passes to *a certain and definite* person, but to be enjoyed *in futuro*. There must be a particular estate to support it. The remainder must pass out of the grantor at the creation of the particular estate. It must vest in the grantee during the continuance of the estate, or *eo instanti* that it determines.

A contingent remainder is where the estate in remainder is limited either to a dubious and uncertain person, or upon the happening of a dubious and uncertain event.

A contingent remainder, if it amount to a freehold, cannot be limited on an estate for years, nor any estate less than freehold. A contingent remainder may be defeated by the determination or destruction of the particular estate before the contingency happens. Hence, trustees are appointed to preserve such remainders.

An executory devise is such a disposition of real property

by will that no estate vests thereby at the death of the devisor, but only on a future contingency. It differs from a remainder in three material points:

1. It needs no particular estate to support it.

2. A fee simple or other less estate may be limited by it—after a fee simple.

3. A remainder may be limited, of a chattel interest, after a particular estate for life in the same property.*

The law will not construe a limitation in a will into an executory devise when it can take effect as a remainder, nor a remainder to be contingent when it can be taken to be vested.

It is a rule of law that estates shall be held to vest at the earliest possible period, unless there be a clear manifestation of the intention of the testator to the contrary.†

Adverbs of time—as *where, there, after, from,* &c.—in a devise of a remainder, are construed to relate merely to the time of the enjoyment of the estate, and not the time of the vesting in interest.‡

Where there is a devise to a class of persons to take effect in enjoyment at a future period, the estate vests in the persons as they come *in esse,* subject to open and let in others as they are born afterward.§

---

* 2 Blackstone's Commentaries, chap. 12.

† Johnson v. Valentine, 4 Sandford, 43; Wrightson v. Macaulay, 14 Meeson & Welsby, 214; Chew's Appeal, 37 Penn. 28; Moore v. Lyons, 25 Wend. 126; Phipps v. Williams, 5 Simons, 44; Gold v. Judson, 21 Conn. 622; Redfield on Wills, 379; Finlay v. King, 3 Pet. 374, 5 Barr, 28; Carver v. Jackson, 4 Pet. 92; Purefoy v. Rogers, 2 Saunders, 388; Doe v. Morgan, 3 Term, 765, 766; Nightingale v. Burrell, 15 Pick. 110.

‡ Johnson v. Valentine, 4 Sandford, 43; Moore v. Lyons, 25 Wendell, 119; Boraston's Case, 3 Coke, 20; Minnig v. Batdorff, 5 Barr, 506; Rives v. Frizzle, 8 Iredell's Equity, 239.

§ Johnson v. Valentine, 4 Sandford, 45; Doe v. Provoost, 4 Johnson, 61; Chew's Appeal, 37 Penn. 28; Doe v. Ward, 9 Adolphus & Ellis, 582, 607, 4 Dow, 203; Doe v. Nowell, 1 Maule & Selwyn, 334; Bromfield v. Crowder, 1 New Reports, 326; Phipps v. Ackers, 9 Clark & Finelly, 583; Doe v. Prigg, 8 Barnewall & Cresswell, 235; Minnig v. Batdorff, 5 Barr, 505; Gold v. Judson, 21 Conn. 623.

An estate once vested will not be devested unless the intent to devest clearly appears.*

The law does not favor the abeyance of estates, and never allows it to arise by construction or implication.†

" When a remainder is limited to a person *in esse and ascertained,* to take effect by *express limitation,* on the termination of the preceding particular estate, *the remainder is unquestionably vested.*"‡

This rule is thus stated with more fulness by the Supreme Court of Massachusetts.   " Where a remainder is limited to take effect in possession, if ever, immediately upon the determination of a particular estate, which estate is to determine by an event *that must unavoidably happen by the efflux of time,* the remainder vests in interest as soon as the remainder-man is *in esse* and ascertained, provided nothing but his own death before the determination of the particular estate, will prevent such remainder from vesting in possession ; yet, if the estate is limited over to another in the event of the death of the remainder-man before the determination of the particular estate, his vested estate will be subject to be devested by that event, and the interest of the substituted remainder-man which was before either an executory devise or a contingent remainder, will, if he is *in esse* and ascertained, be immediately converted into a vested remainder."§

In 4th Kent's Commentaries, 282, it is said : " This has now become the settled technical construction of the language and the established English rule of construction."‖ It is added : " It is the uncertainty of *the right* of enjoyment, and not the uncertainty of *its actual enjoyment,* which renders a remainder *contingent.*   The present capacity of taking effect in possession—if the possession were to become vacant—distinguishes a vested from a contingent remainder, and not the

---

* Chew's Appeal, 45 Penn. 232;   Harrison *v.* Foreman, 5 Vesey, 208 ; Doe *v.* Perryn, 3 Term, 493 ; Smither *v.* Willock, 9 Vesey, 234.

† Comyn's Dig., Abeyance, A. E. ; Catlin *v.* Jackson, 8 Johnson, 549; Ekins *v.* Dormer, 3 Atkyns, 534.

‡ Preston on Estates, 70.

§ Blanchard *v.* Blanchard, 1 Allen, 227.

‖ Doe *v.* Prigg, 8 Barnewall & Cresswell, 231.

certainty that the possession will ever become vacant while the remainder continues."*

It is further said in the same volume:† "A. devises to B. for life, remainder to his children, but if he dies without leaving children remainder over, both the remainders are *contingent*, but if B. afterward marries and has a child, the remainder becomes vested in that child, subject to open and let in unborn children, and the remainders over *are gone forever*. The remainder becomes a *vested* remainder in fee in the child as soon as the child is born, and does not wait for the parent's death, and if the child dies in the lifetime of the parent, the vested estate in remainder descends to his heirs."‡

We have quoted this language because of its appositeness to the case under consideration. The propositions stated are fully sustained by the authorities referred to. Other authorities, too numerous to be named, to the same effect, might be cited. We content ourselves with referring to a part of those to which our attention has been called in the briefs in this case.§

This doctrine received the sanction of the Supreme Court of Ohio in *Jeefers* v. *Lampson*,‖ where it was adopted and applied. The leading authorities relied upon by the counsel for defendants in error in this case were cited by the court and control the result. We are bound by this decision as a local rule of property.

---

* Williamson v. Field, 2 Sandford's Chancery, 533.          † Page 284.

‡ Doe v. Perryn, 3 Term, 484 (Buller's opinion) ; Right v. Creber, 5 Barnewall & Cresswell, 866 ; Story, J., in Sisson v. Seabury, 1 Sumner, 243 ; Hannan v. Osborn, 4 Paige, 336 ; Marsellis v. Thalhimer, 2 Id. 35.

§ Harrison v Foreman, 5 Vesey, 208 ; Belk v. Slack, 1 Keen, 238 ; Bromfield v. Crowder, 1 New Reports, 325 ; Danforth v. Talbot, 7 B. Monroe, 624 ; Goodtitle v. Whitby, 1 Burrow, 234 ; Moore v. Lyons, 25 Wendell, 119 ; Randoll v. Doe, 5 Dow, 202 ; Edwards v. Symons, 6 Taunton, 214 ; Phipps v. Ackers, 9 Clark & Finelly, 583 ; Stanley v. Stanley, 16 Vesey, 506 ; Doe v. Nowell, 1 Maule & Selwyn, 334 ; Boraston's Case, 3 Coke, 52 ; Doe v. Ewart, 7 Adolphus & Ellis, 636 ; Minnig v. Batdorff, 5 Barr, Pennsylvania State, 503.

‖ 10 Ohio State Rep. 101.

The same doctrine has been sanctioned by this court.*

. According to the theory of the plaintiff's counsel, if Mary Jane Barr had married and had died before her mother, leaving children, they would have been cut off from the estate. Surely the testator could not have intended such a result.

In three of the cases, substantially like this as to the point under consideration, brought to our attention by the counsel for the defendants in error, this consequence of such a construction was adverted to by the court.

In *Carver* v. *Jackson*,† the court say : " It is also the manifest intention of the settlement, that if there is any issue, *or the issue of any issue*, such issue shall take the estate, which can only be by construing the prior limitation in the manner in which it is construed by this court."

In *Goodtitle* v. *Whitby*,‡ Lord Mansfield said : " Here, upon the reason of the thing, the infant is the object of the testator's bounty, and the testator does not mean to deprive him of it in any event. Now, suppose that the object of the testator's bounty marries and dies before his age of twenty-one, *leaving children*, could the testator *intend in such an event to disinherit them ?* Certainly he could not."

In *Doe* v. *Perryn*,§ Buller, Justice, said : " But if this were held not to vest till the death of the parents, this inconvenience would follow, that it would not go to grandchildren ; for if a child were born who died in the lifetime of his parents, leaving issue, such grandchild could not take; which could not be supposed to be the intention of the devisor."

Mary Jane Barr was, at the death of the testator, within every particular of the category, which, according to the authorities referred to, creates a vested remainder.

1. The person to take was *in esse*.

---

* Finlay et al. *v.* King's Lessee, 3 Peters, 376 ; Carver *v.* Jackson, 4 Id. 1 ; Williamson et al. *v.* Berry, 8 Howard, 495; Croxall *v.* Shererd, 5 Wallace, 280 ; see also Washburn on Real Property, 229, and 1 Greenleaf's Cruise, tit. Remainder.

† 4 Peters, 1.          ‡ 1 Burrow, 233.          § 3 Term, 495.

2. She was ascertained and certain.

3. The estate was limited, to take effect in her absolutely, upon the death of her father.

4. That was an event which must unavoidably happen by the efflux of time.

5. Nothing but her death, before the death of her father, would defeat the remainder limited to her.

6. She had a fixed right of property on the death of the devisor. The period of enjoyment *only* was deferred and uncertain.

7. The time of enjoyment *in possession* depended upon the death of her mother. The right was in nowise dependent on that event.

8. Upon the death of her father, she surviving him, her estate, before *defeasible*, became indefeasible and absolute.

We are thus brought to the conclusion, upon technical as well as untechnical grounds, that Mary Jane Barr had, at the time of her death, an indefeasible estate of remainder in fee in the premises in controversy.

In the view we have taken of this case, the doctrine of shifting uses can have no application; we therefore forbear to advert to the rules of law relating to that subject.

IV. Mary Jane Barr having died unmarried and intestate, it remains to inquire to whom her estate passed.

The descent cast was governed by the statute of December 30th, 1815.

The first section only applies to the subject.

The first part of the fourth clause of that section is as follows:

"4. If there be neither brother nor sister of the intestate of the blood of the ancestor from whom the estate came, or their legal representatives, and if the ancestor from whom the estate came be deceased, the estate shall pass to the *brothers and sisters* of the ancestor from whom the estate came, or their legal representatives." This gave the property "to the brothers and sisters" of the testator, "or their legal representatives."

The language of this clause is plain and unambiguous.

There is nothing in the context, rightly considered, which qualifies, or affects it.   There is, we think, no room for construction.*   We concur entirely in the views of the eminent counsel, whose professional opinions, long since written, have been submitted to us.   We think the point hardly admits of discussion.   If there could be any doubt on the subject, it is removed by the act of 1835, which substitutes for the rule of descent here under consideration, the one which we are asked to apply.   Were we to adopt the construction claimed by the plaintiff's counsel, instead of adjudicating we should legislate.   That we have no power to do.   Our function is to execute the law, not to make it.

The instructions given by the court to the jury were in accordance with the views we have expressed.   We find no error in the record, and the judgment is

AFFIRMED.


Mr. Justice GRIER (with whom concurred CLIFFORD, J.), dissenting.

I cannot let this case pass without expressing my entire dissent from the conclusions of the majority of my brethren, both on the construction of the will of William Barr and the statute of descents of Ohio.

In the construction of a will the first great rule—one that should control and govern all others—is, that the court should seek the intention of the testator from the four corners of his will.   All technical rules, from Shelley's case down, were established by courts only for the purpose of effectuating such intention.   But it is easy to pervert the testator's intention by an astute application of cases and precedents, of which the present case is the last example of many which have preceded it, and where the testator's intention is entirely defeated by the application of rules intended to effectuate it.   The remainder in fee to the children of John M. Barr was not to vest *till the decease of Maria Barr.*  " And upon the decease of said Maria, I devise the remainder of

---

* Armstrong *v.* Miller, 6 Ohio, 124.

my estate to the legitimate child or children of John M. Barr and his heirs forever, remainder over to the testator's sons-in-law in case of failure of such issue of the son." Such is the language. By construing the remainder to vest before "the decease of Maria Barr," the executory devise to the sons-in-law is entirely defeated, and the clear intention of the testator frustrated by factitious rules intended to facilitate its discovery.

It often happens that legislative acts require the same liberal rules of construction as wills, where the testator is presumed to be *inops concilii.* It only requires the reading of the fifth section of the statute before the fourth in order to effectuate the intention of the legislature, and to clear it from the absurdity of giving an intestate's estate, not to his next of kin, but to his brothers and sisters, instead of his own children.