WALLACE v. REPUBLIC NAT. BANK & TRUST CO. OF DALLAS et al.

No. 7818.

Circuit Court of Appeals, Fifth Circuit.
Jan. 2, 1936.

Rehearing Denied Jan. 24, 1936.

John C. Dawson and Frank A. Liddell, both of Houston, Tex., for appellant.

B. D. Tarlton, I. W. Keys, Albert W. Searcy, and John S. McCampbell, all of Corpus Christi, Tex., S. W. Marshall, of Dallas, Tex., and Ike S. Kampmann, of San Antonio, Tex., for appellees.

Before FOSTER, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

Clark Pease died in November, 1929, leaving a last will and testament, in which he appointed his only son, Myron A. Pease, executor, and provided "that no other action shall be had in the County Court in relation to the settlement of my estate than the probating and recording of this will and the return of an inventory, appraisement and list of claims of my estate." The will, after providing for the payment of the testator's debts, and making a bequest to his wife, Lida A. Pease, of all of testator's household goods, pictures, furniture, jewelry, and automobiles, provided: "All of the remainder of my estate of every character whatsoever, real, personal and mixed, I do hereby will, devise and bequeath unto the Republic Trust & Savings Bank of Dallas, Texas, to be held and disposed of nevertheless in trust in the following manner." By a codicil to the will the Republic National Bank & Trust Company of Dallas, Tex. (herein referred to as the trustee), was substi-

tuted to the place of the trustee named in the above set out provision. Perti- nent trust provisions of the will are set out in the margin.[1] The will was duly

[1] "1. As soon after my death as is practicable, it is my desire that my said Trustee shall, at such times as in its judgment it may determine sell and dispose of all of my property of every character whatsoever, except my capital stock in the City National Bank of Corpus Christi and the Port Compress Company of Corpus Christi (provided said capital stock of said Bank and said Compress Company may also be sold under the terms and conditions arising as hereinafter provided) and that the proceeds of such property so sold by said Trustee shall be invested and reinvested in such stocks, bonds, notes and other securities as such Trustee may in its judgment determine, including any that may be owned by said Trustee." * * *

"2. It is expressly agreed that the annual income from all of my estate of every character whatsoever held by my Trustee hereunder shall quarterly, or as soon thereafter as is convenient, be paid over to my said wife by said Trustee so long as she shall live and upon the death of my wife, half of my estate in value then remaining in the hands of said Trustee hereunder shall vest in fee simple in and thereupon be delivered by my said Trustee to my son, Myron A. Pease, if then surviving, and if not to his children. Fifteen per cent (15%) of the remaining half of my estate in value shall be paid in cash by said Trustee to my beloved daughter, Marie Pease Crook, which shall thereupon vest in her in fee simple absolute, she surviving my said wife, or to her children in the event my said wife survives my said daughter; and the remaining eighty-five per cent (85%) of said half of my estate shall continue to be held by said Trustee hereunder, and the income therefrom shall by said Trustee thereupon and thereafter quarterly be paid over to my said beloved daughter so long as she shall live; and upon her death, she having survived my said wife, or upon the death of my said wife she having survived my daughter, said income from said eighty-five per cent of said half of my estate then remaining in the hands of said Trustee shall be paid over to the guardian of the child or children of my deceased daughter; share and share alike, until twenty years from the date of the death of my daughter or wife as the case may be, at which time all of the estate then remaining in the hands of said Trustee shall vest in fee simple absolute, share and share alike, in the said children of my deceased daughter and shall thereupon be delivered to them,

or their guardian; whereupon, this trust shall in all things cease and determine."

"4. If, at the date of the death of my wife, my daughter be dead and leave no bodily descendant surviving her, all of my estate then in the hands of said Trustee shall vest in fee simple in my said son, if living, or if dead, in his children; if, at the date of the death of my wife, my son be dead and leave no bodily descendant surviving him, the whole of my estate hereunder shall be held and distributed by said Trustee and pass hereunder in the same manner as the half which would go to my said daughter and her children should she and my son both survive my said wife."

"5. So long as any part of the capital stock of said Compress Company or of said City National Bank of Corpus Christi shall remain in the hands of said Trustee hereunder, the same shall not be sold, only and upon the request in writing of the sale thereof either by my daughter Marie Pease Crook, or by my son, Myron A. Pease, addressed to said Trustee, and said Trustee thereupon, having made such investigation as it may determine, decides that in its judgment said stock, or any part thereof, should be sold. Whereupon, said Trustee shall have the right to sell all or such part of said stock at any price it may determine, and invest and re-invest the proceeds thereof as is above provided with regard to the other property of my estate hereunder."

"6. Upon the death of my wife, I do hereby expressly empower my said Trustee to make the partition of my said estate into two parts in the following manner: (a) Said Trustee shall appoint three appraisers to appraise my estate, and any action of the Trustee hereunder on such appraised value shall be final and conclusive on all beneficiaries of every character and, upon such appraisement being made said Trustee shall set apart and deliver to my said son at its appraised value capital stock in the City National Bank of Corpus Christi, to the full amount of the appraised value of half of my said estate, provided there be sufficient of said capital stock in said appraised value to so satisfy his share; and, provided there should be insufficient of said capital stock of said City National Bank on such appraised value to fully pay over to my said son his share of my estate hereunder provided, then the remainder of such value shall be made up to him by said Trustee delivering or conveying to him such other part of my said estate at its appraised value, except such

probated in the probate court of Nueces county, Tex., and Myron A. Pease duly qualified as executor thereunder. At the time of his death, the decedent owned assets which in January, 1930, were appraised at an amount in excess of $300,-000. Included in those assets were 8,800 shares, each of the par value of $10, of the capital stock of City National Bank & Trust Company of Corpus Christi (herein referred to as the City National Bank), and 1,697 shares, each of the par value of $50, of Port Compress Company of Corpus Christi. The two stocks were major assets of the estate, the Bank stock being appraised at $132,000 and the Compress stock at $63,000. The decedent controlled the City National Bank and the Compress Company as a result of his ownership of the mentioned shares of the stocks thereof. For several years prior to decedent's death his son, Myron A. Pease, was associated with the decedent in the management of the Bank, the son being an official of the Bank; and Frank Crook, the husband of decedent's daughter, Marie Pease Crook, was the manager of the Compress Company. When the decedent died, his estate was solvent; its appraised value greatly exceeding in amount the aggregate amount of then existing debts and claims against the estate. At that time suits were pending against the decedent on claims which were contested. Those suits were revived and were still pending and undetermined at the time of the rendition of the decree now under review. At the time of his death, the decedent was surety on a bond given to secure the deposit in the City National Bank of moneys of the Corpus Christi independent school district. In April, 1930, the trustee took possession of all the funds, property, and assets of the decedent, including the above-mentioned stocks, caused the certificates evidencing decedent's ownership of those shares to be canceled and new certificates therefor to be issued to itself as trustee; and thereafter the trustee administered the decedent's estate as a testamentary trust. In November, 1931, the City National Bank failed, and appellant was by the Comptroller of the Currency appointed receiver of that bank, and continues to act as such. In January, 1932, the Comptroller of the Currency made an assessment against each of the shareholders and owners of the capital stock of the City National Bank for an amount equal to the par value of the stock owned by each shareholder, including the trustee as such, requiring them, and each of them, to pay said assessment on or before the 23d day of February, 1932. In accordance with that assessment, the amount of which against the trustee is $88,000, it bears interest from February 23, 1932, at the rate of 6 per cent. per annum. Prior to January 31, 1934, a judgment in the sum of $105,408.-39 was rendered against the City National Bank and the appellant as its receiver, on the above-mentioned bond given to secure the deposit of funds of said school district, which judgment was affirmed by the Court of Civil Appeals at San Antonio, Tex. At the time of the rendition of the decree now under review, the amount of that judgment had been reduced to $42,163.37 by dividend payments made by the receiver of the City National Bank. As a result of the failure of the City National, of said assessment against the trustee, and of the rendition of said judgment against the trustee, the assets of said trust estate held by the trustee (no part of which has been distributed to beneficiaries under the will other than decedent's widow, who still lives), are insufficient in value to pay the debts and liabilities chargeable against those assets.

In this suit, which was begun in July, 1934, to which the receiver of the City National Bank, the trustee, Lida A. Pease,

---

Compress stock as shall be sufficient to complete his share hereunder."

"(b) All of the remaining half of my said estate of every character whatsoever, except the half set apart to my said son by said Trustee shall be held and disposed of by my Trustee as hereinabove provided. The fifteen per cent (15%) in cash to be paid to my daughter shall be realized by said Trustee by sale of such part of that half as the Trustee may determine."

"7. Said Trustee is hereby authorized and empowered out of the income from said estate to pay all state and federal taxes of every character whatsoever which may be chargeable against it as Trustee, or in any other manner hereunder; it being expressly provided that the half of my estate so passing to my son hereunder shall be charged with the payment of all taxes of every kind whatsoever, federal or state, against it, and like wise, the other half of said estate shall be chargeable with all the taxes, state or federal, of every character whatsoever against it."

the decedent's widow, and other beneficiaries under the will, including a daughter of decedent's daughter, Marie Pease Crook, and holders of debts or claims against the estate, are parties, the court rendered a decree which, in addition to matters not material to be stated, adjudged to the following effect: That appellant, as receiver of the City National Bank, recover of the trustee, and Myron A. Pease, individually, the sum of $88,000, with interest from January 14, 1932, payable only out of the part of the estate of the decedent of which Myron A. Pease is beneficiary under the will; that the will of the decedent creates two trusts, one in behalf of Marie Pease Crook and her daughter, Catherine Crook, under which the trustee holds 1697 shares of the capital stock of the Compress Company; the other under which the trustee holds 8,800 shares of the City National Bank stock for the benefit of Myron A. Pease, the Compress stock and the Bank stock being subject to a life estate of decedent's widow, Lida A. Pease; that debts of the decedent, including the unpaid balance of said judgment in favor of said school district, are entitled to priority of payment out of assets of the decedent held by the trustee, including said Compress stock; that any balance of such assets, except the Compress stock, held by the trustee, after the satisfaction of debts and claims accorded priority, is to be applied to the payment of said judgment in favor of the receiver of the City National Bank; that receiver alone appealed from that decree.

Under the decedent's will, his son became what in Texas is known as an independent executor. Under Texas law such an executor is empowered to surrender property bequeathed to one who, under the will, is entitled to receive it, property so surrendered coming to one who so acquires possession of it subject to a lien thereon for debts of the testator. Vernon's Annotated Civil Statutes Texas, arts. 3461, 3464; Parks v. Knox, 61 Tex. Civ.App. 493, 130 S.W. 203; Wilhelm's Estate v. Matthews (Tex.Civ.App.) 274 S.W. 251. As to property so surrendered by an independent executor, the decedent's creditors are entitled to priority over claims against the devisee or legatee in possession which arose or accrued after that possession was acquired. The liability under an assessment against shareholders of a failed national bank is one

created by statute against those who were holders of such shares at the date of the bank's failure, or who transferred their shares within 60 days before the date of the failure, or with knowledge of the impending failure. 12 U.S.C.A. §§ 64, 66. Property surrendered by the independent executor to the trustee did not come to the possession of the latter charged with the liability created by the assessment. That liability resulted from the failure of the City National Bank, an occurrence subsequent in time to the taking effect of the will and the surrender to the trustee, and was statutory and incidental to the ownership or holding of shares of the stock of the failed bank. McClaine v. Rankin, 197 U.S. 154, 161, 25 S.Ct. 410, 49 L.Ed. 702, 3 Ann.Cas. 500. The property subject to that liability is not the entire estate of the decedent who formerly owned that stock, but only the estate and funds in the hands of the testamentary trustee who was the holder of the shares on which the assessment was based. 12 U.S.C.A. § 66. The instant case is unlike the case of Matteson v. Dent, 176 U.S. 521, 20 S.Ct. 419, 44 L.Ed. 571, in that the assessment in question in the cited case was made while National Bank stock stood in the name of its deceased owner, while in the instant case the stock stood in the name of the trustee when the Bank failed and when the assessment was made. The liability under the assessment having accrued or arisen subsequent to the time when assets of decedent's estate came to the possession of the trustee subject to a lien in favor of decedent's creditors, as to those assets so in the trustee's possession, the valid claims of decedent's creditors, including the school district, the beneficiary of a bond on which the decedent was contractually liable, had priority over the claim based on the assessment and against the trustee as the holder of shares of the capital stock of the failed Bank.

Under the will, the bulk of the decedent's estate went to the trustee, to be held intact, subject only to changes of investments, during the life of decedent's widow, to whom the income from the trust property was to go so long as she lived. The bequests in favor of decedent's son and daughter, or their descendants, were, as expressly provided by the will, to vest "upon the death of my wife." Nothing in the will indicates that, during the lifetime of the widow, the Bank stock, the

Compress stock, or any other particular asset held by the trustee, was to be held for the sole benefit of any one or more persons other than the widow. The trustee was empowered to sell the Bank stock and the Compress stock, one or both, upon a request in writing of either the decedent's son or his daughter, and there was no provision for the proceeds of such sale being segregated and held by the trustee for the benefit of any particular descendant or descendants of the decedent. The destination, after the death of the widow, of such proceeds or of the investment or investments into which they went, was not prescribed or indicated further than to include those proceeds in the estate which, upon the death of the widow, was to be apportioned and distributed as directed in the will. What the son, or his descendant or descendants, or the daughter, or her descendant or descendants, was to get after the death of the widow, was not any particular asset or assets then held by the trustee, but "half of my estate in value then remaining in the hands of said Trustee." The provision of the will with reference to the Bank stock and the Compress stock did not amount to bequests of those stocks in favor of designated beneficiaries. Those provisions were to the effect that the Bank stock was to be included in the half in value of the decedent's remaining estate to go to the son if the latter survived the widow, and if that stock did not exceed in value one half of such estate; and that the Compress stock was to be included in the half of decedent's remaining estate going to the daughter, if she survived the widow, and if that stock did not exceed in value half of that estate. Nothing in the will indicates an intention to create several trusts, as distinguished from a single trust to be shared in by a plurality of beneficiaries. The testator, in paragraph 3 of the will, speaks of what was created by the trust provisions of that instrument as "this trust." The language of the will shows that the testator intended to create one trust, and that his son and his daughter, respectively, were to get, if he or she survived the widow, "half of my estate in value then remaining in the hands of such Trustee," not the right to segregated identified assets included in that estate. Langford Inv. Co. v. Commissioner (C.C. A.) 77 F.(2d) 468, 471.

Under the will, the decedent's son was not, at or prior to the time of the failure of the City National Bank, the equitable beneficial owner of the stock in that Bank which had been owned by the decedent, that stock then being held by the trustee as a part of the trust estate in his custody, the ultimate beneficial sole ownership of which was not subject to be determined prior to the death of the widow. Likewise, the decedent's daughter had not, at or prior to the time of the rendition of the decree under review, become the equitable beneficial sole owner of the Compress stock; that stock then being held by the trustee as part of the trust estate in his custody, and subject to the liability created by the assessment in question. When the will took effect, acquisition of the Bank stock by the son was contingent, not only upon his surviving the widow, but also upon other events which might or might not occur. The sale of that stock under the power conferred would keep him from getting that stock under the will. He could not get all of that stock if at the time of the division and distribution to be made by the trustee that stock exceeded in value "half of my estate in value then remaining in the hands of said Trustee." If at that time the Bank stock had no value at all, certainly it was not to be included in the allotment to the son of "half of my estate in value then remaining in the hands of said Trustee." What had occurred while the widow still was alive demonstrated that ownership of the Bank stock never would be acquired by the son, as, before the arrival of the time when any interest in the decedent's estate was to vest in the son, that stock by the failure of the Bank had ceased to be an asset of any value, and practically had become nonexistent except as a cause of liability of the holder or owner of it at the time the Bank failed. It seems that the decedent's son did not, from the time the will took effect, have a vested or assignable interest in decedent's estate, because the will provided for the interest bequeathed to him being vested upon the death of the widow, and that, in the event of the son dying during the lifetime of the widow and without any surviving descendant, that interest should go to a class of persons described in the will, in which event that interest would be acquired under the will, not from decedent's son by descent or bequest. Tifton v. Tifton (Tex.Com.App.) 12 S.W. (2d) 987; Loden v. Burgess (Tex.Civ. App.) 74 S.W.(2d) 304; In re Churchill's

Estate, 230 Mich. 148, 203 N.W. 118. The instant case differs from the case of Caples v. Ward, 107 Tex. 341, 179 S.W. 856, in that the will in question in the cited case provided for a remainder interest, in the event of the remainderman dying before the expiration of the precedent life estate, going to the remainderman's descendants. But, without regard to the just mentioned considerations, it is enough to keep the interests of the son and the daughter in the decedent's estate from being vested from the time the will took effect that the acquisition of those interests by the son and the daughter, respectively, was contingent upon wholly uncertain events. Doe, Lessee ex dem. Poor v. Considine, 6 Wall. 458, 474, 18 L.Ed. 869; McArthur v. Scott, 113 U.S. 340, 379, 5 S.Ct. 652, 28 L.Ed. 1015; 23 R.C.L. 500. That the contingencies to which the son's acquisition of the Bank stock and the daughter's acquisition of the Compress stock were subject were not unreal or merely fanciful is made apparent by what happened to the Bank stock, which in reality ceased to exist before the arrival of the time when it could be possible for the son to acquire it under the will. At the time of the Bank's failure, neither the Compress stock nor any other particular asset included in the estate then in the possession of the trustee was held by the trustee for the sole benefit of any particular person or persons who might take something under the will after the death of the widow, and the Compress stock was then held by the trustee as merely a part of the trust estate being administered. This being so, the Compress stock was included in the estate and funds in the trustee's possession, which, under the statute (12 U.S.C.A. § 66), are liable to the assessment in question. We are of opinion that the assets in the possession of the trustee, including the Compress stock, were held by the trustee under one trust, and that those assets, including the Compress stock, are subject to be applied to the satisfaction of the assessment made against the trustee as the holder of shares of stock of the failed Bank. It follows that the court erred in deciding to the effect that the Compress stock was not subject to be applied to the satisfaction of the assessment in question.

The decree is affirmed in so far as it accorded priority to debts of the decedent, including the claim reduced to judgment in favor of said school district, and is reversed in so far as it adjudged that the will of the decedent created two trusts, and that the Compress stock be excluded from the assets adjudged to be subject to be applied to said judgment in favor of the appellant, the receiver of the City National Bank.

Affirmed in part, and reversed in part.