WILLIAM P. HARDING and others *vs.* ST. LOUIS LIFE INSURANCE COMPANY and others.

## October Term, 1875.

TRUST DEED FOR THE BENEFIT OF THE GRANTOR—LEGAL EFFECT.—A young man, of sound mind and of age, conveyed all his real estate to a trustee, the deed reciting a nominal consideration, that the grantor was inexperienced and subject to imposition, and that the conveyance was only in trust to secure the property so that it shall constitute a source of proper support for him, and, to this end, that the trustee is authorized to take charge of the property, manage, control, lease, sell, and convey such parts of the same as may be necessary for the purpose indicated. *Held,* 1. That the legal effect of the instrument was to clothe the grantor with the title and beneficial interest, and leave nothing in the trustee; and, at any rate, only a bare, naked legal title. 2. That, if construed as a power of attorney, the power to "lease, sell, and convey" is conditional upon its being necessary for the maintenance of the grantor. 3. That, in either view, the trustee had no authority to raise money by mortgage, unless necessary for the purpose of the trust.

*Ed. Baxter,* for complainants.
*R. McP. Smith,* for defendants.

THE CHANCELLOR :—On demurrer, the record disclosing a very curious state of facts.

On the 21st of June, 1870, one A. J. Harding, an adult, free from all legal disabilities, so far as appears, conveyed all his realty, including one tract of land of thirty-three acres and two others of five and three acres, respectively, hereinafter mentioned, to E. B. McClanahan, in fee, the pecuniary consideration recited being $5. But the deed also recites that the conveyance is made " only in trust, and for the following uses and trusts—*i. e.,* being young in years and inexperienced in business, and being subject to imposition at the hands of the designing, I have, in my better judgment, determined to secure said property so that it shall constitute a source of proper support for me, such as providing means to pay my board and clothing bills in an amount which shall be ample and reasonable, and to this end my said trustee is authorized to take charge of said property, and so to manage and control the same as shall secure to me such proper and reasonable maintenance, and,

.to effect this end, my said trustee is authorized to lease, sell, and convey such parts of the same as shall be necessary for the purpose indicated, being empowered to pass by deed a fee simple title to such parts of the same as it shall be necessary to sell. He is also authorized to sell and convey, and reinvest in other real estate for my benefit alone, or to exchange the property, or parts thereof, for other property, upon first obtaining leave of the chancery court at Nashville, Tenn. I am to have no title in the same, but shall do all I can to find suitable tenants or purchasers, and, if necessary, recommend to the trustee that leases and sales, when neces-sary, *to* be made, but merely as suggestions to said trustee, to act upon or not, as he may determine ; and if the *corpus* of the trust property should be reduced in amount, in securing a becoming and proper support, my trustee not to be responsible, as such reduction may become necessary, and I expressly request that my said trustee be not required to execute a bond for the execution of the trust, and from giving any bond I release him.''

A more curious document, especially in view of the events which have happened, to protect youth and inexperience from '' imposition at the hands of the designing,'' it would be difficult to imagine. The trustee afterwards mortgaged the thirty-three-acre tract of land mentioned in the deed to the defendant the St. Louis Life Insurance Company, and the five and three-acre tracts to Kate Badoux, to secure money borrowed on the faith of the mortgages, and has never, it is alleged, accounted to the grantor for the money. The grantor, A. J. Harding, died on the 21st of December, 1873, and this bill is filed by his heirs and personal repre-sentative to set aside these mortgages as void for want of authority in the trustee to make them. The question of authority turns primarily upon the construction of the deed as hereinbefore recited.

The deed is on its face, not an absolute, but a trust, con-veyance—a trust exclusively for the grantor. Waiving, for the moment, the questions which may arise on the mode of

exercising the trust, the first point which suggests itself is : What is the legal effect of a conveyance by a person *sui juris* of his realty to a third person in trust for himself ?   Would it have any, and what, legal effect?   It would be a grant to A and his heirs, to the use of B and his heirs, and would fall precisely within the provisions of the statute of 27 Henry 8, ch. 10, § 1, commonly called the statute of uses, and the *cestui que use* would become seized of the legal estate by force of the statute.   The instrument would be simply waste paper, in no way affecting the title of the grantor.

It is notorious that our supreme courts have repeatedly held that this statute was in force in Tennessee.   *Wilson* v. *Kilcannon*, 4 Hayw. 182 ; *Barry* v. *Shelby*, 4 Hayw. 229 ; *Shute* v. *Harder*, 1 Yerg. 1 ; *Russell* v. *Stinson*, 3 Hayw. 1. In a note to this latter case, in my edition of Haywood's Reports, I called attention to the fact that in 1852, in *Smith* v. *Thompson*, 2 Swan, 386, an opinion was prepared and delivered declaring the statute not to be in force.   When the opinion was read, I was sitting by one of our ablest, and now most venerable, lawyers (F. B. Fogg, Esq.), whose comment on this part of the opinion was : " They know not what they are doing ; it will unsettle innumerable titles." Certain it is, the opinion was afterwards modified by striking out the positive assertion, leaving only the expression of a doubt as to whether the statute was in force.   The statute was undoubtedly in force, not merely by the positive decisions upon it, but by the statute law and decisions of the court defining the British statutes, which continued in use after the establishment of our state government. See the editor's note to *Glasgow* v. *Smith*, 1 Tenn. 169, and cases and statutes there cited.   The Code says nothing on the subject.

But the decisions in this state, upon its own laws, have led to precisely the same result, as was suggested in the note to *Russell* v. *Stinson*, referred to.   In *Barry* v. *Shelby*, 4 Hayw. 229, it was said : " The law, according to the

intent apparent in the instrument, will raise the uses to be executed, so moulding and arranging them as that all shall be converted into legal estates according to the intent." The principle thus enunciated was, however, based upon the operation of the statute of uses. The subsequent cases have more clearly defined the principle, without reference to the statute, and even while expressing doubts as to its being in force. "The established doctrine," says Judge McKinney, "is that trustees take exactly that quantity of interest which the purposes of the trust require." *Ellis* v. *Fisher*, 3 Sneed, 234. The question is, not what estate the language used will convey, but what interest the exigencies of the trust demand. *Smith* v. *Metcalf*, 1 Head, 68 ; *Bowers* v. *Bowers*, 4 Heisk. 302 ; *Doe* v. *Considine*, 6 Wall. 458. These were cases of wills, but it was said, in *Ellis* v. *Fisher*, that this construction has been held to prevail, even in the case of a deed, by necessary implication arising from the object of the trust. And so it has been expressly ruled. *Aiken* v. *Smith*, 1 Sneed, 304 ; *Williamson* v. *Wickersham*, 3 Coldw. 52 ; *Park* v. *Cheek*, 4 Coldw. 20. The law may be considered as settled accordingly, notwithstanding the doubt expressed by Judge Andrews, in *Watkins* v. *Specht*, 7 Coldw. 585.

Our law upon this subject is in the condition of the English law, according to a recent author, touching devises to uses. It was at one time doubted in England whether the statute of uses had any application to wills, but it was afterwards held that a devise to uses operates under the statute in the same way, and subject to the same rules, as a conveyance to uses. 2 Fonbl. 24 ; 2 Jar. on Wills. 196. "Whether this is by reason of the force of the statute of uses," says Mr. Digby (Hist. of Law of Real Prop. 304), "or by reason of the intention of the testator to dispose of the lands as if the statute of uses really operated, is a question of some metaphysical nicety, but of no practical importance." And Mr. Jarman admits, at the citation above, that "the point has not, in general, any practical influence on the construc-

tion of wills." In effect, the question is one of intent, and this is the conclusion to which our courts have come in relation to deeds and other instruments, as well as wills. The trustee and beneficiaries, respectively, take just such estates and interests as may be necessary to effectuate the object of the parties as disclosed by the instrument, " as if the statute of uses really operated." The American authorities all tend in the same direction, without reference to the statute. Perry on Trusts, § 299, *et seq.*, and cases cited.

It is an elementary principle that an absolute estate or beneficial interest carries with it, as an incident of property, the unlimited power of disposition, which cannot be taken away or impaired by any clause or proviso in the conveyance from a third person, nor, *a fortiori*, in a conveyance made by the grantor himself for his own benefit. Such a provision is simply void as to a person *sui juris*. Bouv. Inst. § 1698 ; Lit. § 360 ; Co. Lit. 223, *a; Smith, T.* v. *Bell*, M. & Y. 302 ; *Brandon* v. *Robinson*, 18 Ves. 429 ; *Dick* v. *Pitchford*, 1 Dev. & B. Eq. 486. The same principle has been extended to conveyances for the benefit of married women. Although restrictions upon their power of disposition may be good during coverture, and may even revive during a second coverture, yet whenever they become discovert the restriction ceases to be operative, and the power of disposition becomes absolute. *Jones* v. *Salter*, 2 Russ. & M. 208 ; *Tullett* v. *Armstrong*, 4 Myl. & C. 377 ; *Beaufort* v. *Collier*, 6 Humph. 492. The outstanding legal title in such cases, if it can be said to be outstanding, is only the dry title, and, even at law, will be held to be divested in support of the beneficial interest, *without regard to time or possession.* *Marr* v. *Gilliam*, 1 Coldw. 498, 499, citing *Aiken* v. *Smith*, 1 Sneed, 304, and *England* v. *Slade*, 4 T. R. 682 ; *Doe* v. *Sybourn*, 7 T. R. 2. *A fortiori*, will such an outstanding legal title avail nothing in equity.

If, then, the deed under consideration be a mere conveyance of the legal title, retaining the entire beneficial interest in the grantor, the law would consider any clause or proviso

in it restrictive of the power of disposition of the beneficial owner as void. The legal title and the beneficial interest would be treated as vested in the *cestui que use,* either by the statute of uses or by the principle that the trustee takes exactly that quantity of interest which the purposes of the trust require, which is none at all, no trust being necessary to secure to the owner *sui juris* the beneficial ownership of his own property. The law recognizes in him no power to tie his own hands, and any attempt to do so is simply a nullity.

No one can read the deed under consideration without seeing that, whatever may have been the intentions of the draftsman, it does reserve to the grantor the entire beneficial interest. Any lease, or sale, or exchange, or reinvestment is for him. It is for his proper, ample, and reasonable support that whatever is authorized to be done is to be done. No other person has a particle of interest in it. It is clear, therefore, that the property is still his, and the effort to tie his own hands is void. At most, the trust deed only clothed the trustee with the naked legal title, subject to the right of disposition which necessarily remained as an incident to the beneficial interest reserved in the grantor. In this view, and considered simply in the light of a muniment of title, any purchaser from the grantee would take only the naked legal title clothed with the trust. But I am inclined to think that the legal title, the deed being clearly void so far as it attempted to tie the grantor's hands, reverted *instanter,* to use Judge McKinney's language above quoted, " without regard to time or possession."

There is one other light in which the instrument may be looked at in the interest of the defendants, and that is as a simple power of attorney, clothing the attorney in fact with certain specific powers. And I am inclined to think that the court would ignore the nominal character of the instrument, and treat it as what it may be in substance, if, by doing so, innocent third persons could be protected. It is a case where, if anybody is to suffer, it should be the party who

has trusted most. Treated in this light, however, the instrument must be construed like any other power of attorney in writing, persons dealing with the agent being bound to look to the authority under which he acted. *Bank of Mobile* v. *Andrews*, 2 Sneed, 540 ; *Lumpkin* v. *Wilson*, 5 Heisk. 555 ; *Williams* v. *Storm*, 6 Coldw. 203.

When this is done it will be found that the power to "lease, sell, and convey" is coupled with the condition that it shall be necessary for the proper and reasonable maintenance of the grantor, and there is no power whatever to raise money by mortgage. Any disposition of the property beyond what is necessary for the proper and reasonable maintenance of the grantor must be made under the authority of this court. There being no power to mortgage, and nothing at present showing any necessity of sale, the demurrers, so far as they rest upon the supposed power of McClanahan, as trustee, to execute the mortgages in controversy, are not well taken.

The bill states, however, that about the 18th of August, 1871, the defendant McClanahan applied to Baxter Smith and stated that he and Andrew J. Harding wished to make sale of the thirty-three acres to a party who was unwilling to take title under any trust conveyance, and they, therefore, wished to convey said property to Smith, and have Smith reconvey it to McClanahan, individually, so that he could convey it to the expected purchaser in his own name ; and, therefore, by deed of that date, duly registered, McClanahan conveyed said land to Smith for the recited consideration of the assumption by Smith of $4,100 of the alleged debts of Harding, Harding signing a written agreement at the foot of the deed, ratifying McClanahan's action, and releasing to said Smith all claim to said land. On the same day, and as part of the transaction, Smith reconveyed the property to McClanahan upon the same consideration, Harding joining in the deed. The bill charges that this plan was resorted to solely for the purpose of obviating the alleged objections of the prospective purchaser, the said

McClanahan, as between him and Harding, still holding the land under the original trust. That afterwards, on the 20th of June, 1872, Mr. McClanahan, not regarding said trusts, conveyed the said property to secure a loan from the defendant to the St. Louis Mutual Life Insurance Company; that the land was subsequently sold in foreclosure of said trust or mortgage, and is now held by said defendant.

The bill further says in this connection: "Complainants charge that said St. Louis Mutual Life Insurance Company required, before it made said loan to McClanahan, to be fully advised of the title; that it was furnished with a written abstract of the title, showing all the conveyances above set forth which were made prior to the loan, and that it was fully notified that, though said McClanahan held the legal title apparently divested of the trust, yet in fact that it was not his property, and in equity and good conscience he still held it in trust for said Andrew J. Harding, under the trusts, limitations, and restrictions of said deed of June 21, 1870."

If the arrangement with Smith was resorted to, as alleged, merely for the purpose of effecting a sale of the land, it is clear that McClanahan would hold the legal title then acquired precisely as he held the legal title under the conveyance of the 21st of June, 1870. He, and any person claiming under him with notice, would stand in no better situation than before the deed from Smith. The allegation of the bill is that the defendant "was fully notified that, though said McClanahan held the legal title apparently divested of the trust, yet in fact that it was not his property, and in equity and good conscience he still held it in trust for said Andrew J. Harding" as before. The demurrer admits the fact to be as thus charged, and the causes of demurrer assigned do not obviate the admission.

The demurrers are, therefore, not well taken, and must be overruled.