### In re YOUTSEY.

(District Court, S. D. Ohio, W. D. March 3, 1916.)

No. 5529.

1. WILLS ⬅➡629—CONSTRUCTION—TIME OF VESTING.

The rule in Ohio is to construe devises and bequests as vesting at testator's death, unless his invention to postpone vesting is clearly indicated in the will.

2. PERPETUITIES ⬅➡4(10)—CREATION OF FUTURE ESTATES.

There is no attempt to create a perpetuity in violation of Gen. Code Ohio, § 8622, by a will giving to A., living at time of execution of the will and death of testator, certain lands for life, and after his death to the heirs of his body, part to be possessed by him on arriving at majority, and the balance after that event and the death of testator's wife, the wife being given the use and occupation till such times.

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. WILLS ☞607(2)—ESTATES TAIL—INTERESTS OF FIRST DONEE AND CHILDREN UNDER STATUTE.

Under Gen. Code Ohio, § 8622, if a will creates a fee tail, the interest of the first donee is not a mere life estate, but his children do not take the fee-simple title till his death, when the estate tail is enlarged into an absolute estate in fee simple, and a deed by a child of the donee conveys no estate if the grantor dies before the donee, leaving issue surviving.

4. WILLS ☞601(1)—ESTATE DEVISED—CONTROLLING PROVISIONS.

Language of a will which, standing alone, gives one a fee simple, is controlled by subsequent provisions, which by positive language reduces his interest to a life estate.

5. WILLS ☞614(19)—DEVISE OF TWO LIFE ESTATES.

Land may be devised to one for life, and after her death to another for life.

6. ESTATES TAIL ☞1—LIMITATION TO HEIRS.

To create an estate tail there must be a limitation in express terms or by direct reference, not only to heirs, but to heirs of the donee's body.

7. ESTATES TAIL ☞1—INTENT TO CREATE—PRESUMPTION.

Estates tail are not favored, and there is a presumption against intention to create them, which must be overcome by language free from ambiguity.

8. WILLS ☞605—ESTATE TAIL OR LIFE ESTATE WITH REMAINDER.

A will devising a farm to testator's son for life, and on his death to the heirs of his body, and providing that, if any devisee died leaving no heirs of his body, such devisee's portion should go to the devisees living or their heirs per stirpes, *held* not to create an estate tail, but to devise a life estate to the son, with remainder to the son's children, or, in default thereof, over to testator's other children or their heirs per stirpes.

9. WILLS ☞634(17)—CONTINGENT REMAINDERS—VESTING OF FEE.

Where a life estate is devised to a son, single and childless, with remainder to his children, or in default thereof over to testator's other children or their heirs per stirpes, the fee at death of testator vests in his heirs, subject to be divested when a child is born to the life tenant, and then vests in such child, subject only to open up and let in subsequently born children.

10. PARTITION ☞16—TITLE TO SUPPORT ACTION.

The life tenant, being also vested by deed of a remainderman with an interest in fee, may maintain partition against the other remaindermen.

11. PARTITION ☞109(1)—SALE—TITLE.

So long as partition decree, under which sale is made and confirmed, remains in force, the parties are divested of title, and the purchaser is vested therewith.

12. INFANTS ☞29—ESTOPPEL—ACCEPTANCE OF BENEFIT.

Infant defendants in partition ratify the proceedings, and are estopped to take advantage of a mere irregularity, by receipting to their guardian for and appropriating their shares of the proceeds, with full knowledge of the facts, on arriving at age.

13. JUDGMENT ☞479—COLLATERAL ATTACK—PARTITION.

Proceedings in partition are judicial, and cannot be collaterally impeached, in the absence of fraud.

14. JUDGMENT ☞747(2)—MATTERS CONCLUDED—PARTITION.

Partition forms no exception to the general rule that a judgment is conclusive of every matter which is actually and necessarily involved in its determination, and hence of the title.

15. JUDGMENT ☞948(1)—RES JUDICATA—NECESSITY OF PLEADING.

A judgment, to be available as res judicata, must be specially pleaded.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

16. JUDGMENT ⊚⇒736—MATTERS CONCLUDED—QUIETING TITLE.

Judgment against plaintiffs in action in which they claimed a fee under a will, and sought to have their title quieted, it being held that they took only a life estate, is not conclusive as to effect of partition proceedings and deeds from remaindermen to life tenant, not considered.

In Bankruptcy. In the matter of Andrew S. Youtsey, bankrupt. On application to construe will and sell real estate. Decree rendered.

D. B. Van Pelt, of Dayton, Ohio, for trustee in bankruptcy.

Keifer & Keifer and Paul C. Martin, all of Springfield, Ohio, for the Agenbroad interests.

SATER, District Judge. The primary question for decision is, What estate has Andrew S. Youtsey, the bankrupt, in the 158 acres of land hereinafter mentioned?

On February 25 and June 21, 1915, certain creditors filed a petition and a supplemental petition, respectively, averring that the bankrupt is seized in fee simple of the land in question, and that the trustee in bankruptcy asserts that there is a cloud upon its title which prevents him from conveying it in fee to a purchaser. A construction of the will of Harrison Youtsey is requested in each of such pleadings. On June 23d the trustee in bankruptcy by intervention pleaded that the bankrupt's only property is the 158-acre farm located in Lost Creek township, Miami county, which farm was devised to the bankrupt by his father, Harrison Youtsey, who died testate in 1882, his will being duly probated in the early portion of that year. The testator left a widow and five children, to wit, William H., John C., Clara, Ella, and Andrew, the bankrupt. Andrew, at the time of his father's death, was a minor, unmarried, and without children, but subsequently married, from which marriage there were born to him the following children: Sarah K. (deceased without children), Hattie, George R., and Earl, all of whom are now of age, Earl having attained his majority subsequent to the institution of these proceedings. A controversy has long existed as to the extent of the bankrupt's estate in the premises in question. Averments are made by the trustee as to a partition proceeding instituted in the state court by the bankrupt against his children other than Sarah K. Youtsey, and of various deeds which were executed and delivered to the bankrupt to lodge in him the title to such property, which partition proceeding and conveyances will be hereinafter noted. The trustee's prayer is for a determination of the estate held by Andrew in the lands in question. On June 25th Earl L. Youtsey, then of full age, admitting that he is one of the bankrupt's children, and also the will and death of his grandfather, Harrison Youtsey, and the unsecured character of the petitioners' claims, by answer denied all else, and asks for a construction of such will.

In his will, duly executed February 5, 1882, Harrison Youtsey gave and devised to his son William H. a farm of 161 acres; to his daughter Ella a farm of 100 acres; to his son John C. 160 acres; to his daughter Clara 146 acres; and to his son Andrew the west portion of the home farm, to be possessed by him when he should arrive at the

age of 21 years, and the remaining portion of such home farm after the death of the testator's wife and Andrew's attaining the age of 21 years. The will then provides:

"All of the foregoing devises to the several devisees as named are to be to them for their natural lives, and on their decease are to go to the heirs of their bodies, and if any die leaving no heirs of their bodies then their devise to revert back (subject to right of curtesy or dower as the case may be) as hereafter provided, and to be divided equally between those living or their heirs per stirpes.

"It is my will that the provisions I have herein made in relation to the several tracts of land by me devised to my several children shall not be so construed as to exclude the husbands of my deceased daughters from holding curtesy in said tracts of land so devised by me to my daughters, or the wives of my deceased sons from holding dower in the tracts of land devised by me to them, and after their decease then to be governed by the provisions in this will made. I mean by this that although the fee to the several tracts of land by me devised to my several children does not vest in them, but in the heirs of their bodies, that the wives and the husbands of said children herein named now married, or that may hereafter marry, shall have the same interest of dower or curtesy as though the fee had vested in my said sons and daughters, except, if any die without heirs of their bodies, then to revert as above provided by me in this my will."

He then gave to his wife the use and occupation of the home farm until Andrew should arrive at his majority, at which time she was directed to surrender to him the west portion of the home farm. She was to retain the occupancy, use, and control of the east portion of it during her natural life. All household goods were given to her absolutely and subject to her disposal. The will then proceeds:

"At the death of my said wife my son Andrew S. Youtsey (if he be twenty-one years of age), and, if not, when he shall be twenty-one years of age, shall have that part of the home farm as above devised to my said wife during her natural life, and I hereby devise the same to him during his natural life, and then to be subject to the same provisions as are hereinbefore made as to all the other devisees."

Provisions were made for executors and the settlement of the estate, which has been fully administered. Harrison Youtsey's widow died July 2, 1907.

[1] The Ohio rule is that, unless the intention of a testator to postpone the vesting of a devise or bequest to some future time is clearly indicated in his will, such devise or bequest vests in the devisee or legatee at the testator's death. Bolton v. Bank, 50 Ohio St. 290, 293, 33 N. E. 1115; McArthur v. Scott, 113 U. S. 340, 378, 5 Sup. Ct. 652, 28 L. Ed. 1015. The law favors the vesting of estates. Section 10578, G. C. Ohio; Linton v. Laycock, 33 Ohio St. 128, 134. The presumption is that, whatever life or particular estate Harrison Youtsey first created, he intended to pass the fee under his will. The language of the will discloses the existence of such a purpose and an intention to dispose of his entire estate.

[2] As Andrew was in being at the time of the execution of the will and the death of his father, the testator did not create, or attempt to create, a perpetuity. Section 8622, G. C. Ohio; Turley v. Turley,

11 Ohio St. 173, 180, 181; Dungan v. Kline, 81 Ohio St. 371, 380, 90 N. E. 938.

[3] If the will created a fee tail in Andrew, then his interest, as the first donee in tail, was not the same as that of a mere life estate (Dungan v. Kline, 81 Ohio St. 383, 90 N. E. 938; Harkness v. Corning, 24 Ohio St. 428); nor has the fee as yet in that event vested in the children. If the will created a fee tail, his children would not take the fee simple until the estate shall reach them at his death, at which time the statute (section 8622) will enlarge the estate tail into an absolute estate in fee simple. Dungan v. Kline, 81 Ohio St. 382, 383, 384, 90 N. E. 938. If a fee tail was created, no deed executed and delivered by any one of Andrew's children conveyed an estate to the grantee, if the grantor should die before Andrew, leaving issue surviving. Dungan v. Kline.

[4, 5] The will, however, did not create a fee tail estate. The language of the earlier portion of its second item is such, standing alone, as to give to Andrew a fee simple in the 158 acres of land in question. By positive language, equally clear and decisive and twice stated, the subsequent provisions of the will reduce his interest to a life estate. The testator had power to do this. Collins v. Collins, 40 Ohio St. 353, 364, 365. He took a life estate in the west part of the farm, to be possessed by him on attaining the age of 21. His mother, who had the use and occupancy of the whole of the farm until that time, was required, on his attaining his majority, to surrender such portion of the farm to him. The residue of the farm she retained during her life, after which he took a life estate. It was competent for the testator to provide thus for two life estates. Paris v. Winterburn, 6 Ohio Cir. Ct. R. 635; Jones, Law of Real Property, etc., §§ 607, 608; Gibson v. McNeely, 11 Ohio St. 131, 135.

[6-8] A consideration of the will justifies the conclusion that an estate tail was not created in favor of the heirs of Andrew's body, and that Andrew was given a life estate. Washburn on Real Property (5th Ed.) vol. 1, p. 104, defines an estate tail thus:

"Estates tail then are estates of inheritance, which, instead of descent to heirs generally, go to the heirs of the donee's body, which mean his lawful issue, his children, and through them to his grandchildren in a direct line, so long as his posterity endures in a regular order and course of descent, and, upon the extinction of such issue, the estate determines."

To create an estate tail there must be a limitation in express terms or by direct reference, not only to heirs, but to heirs of the donee's body. At common law the necessary language to create an estate tail was, "To A. and the heirs of his body," the words "heirs of his body" following the devise to the donee in tail. Washburn, Real Property (5th Ed.) 105, 107; Pollock v. Speidel, 17 Ohio St. 439, 445, 446; Williams v. Haller, 13 Ohio N. P. (N. S.) 329, 336. Estates tail, however, are not favored in this country. The presumption is against the intention to create them, and that presumption must be overcome by language entirely free from ambiguity. Collins v. Collins, 40 Ohio St. 353, 363, 364. The ambiguity in the Harrison Youtsey will is fatal to a construction favorable to the creation of an estate tail.

King v. Beck, 12 Ohio, 390, is not controlling, not only because that case was subsequently reversed (15 Ohio, 559), but also on account of the dissimilarity between the will there under consideration and that of Harrison Youtsey. The will does not run to "Andrew S. Youtsey and the heirs of his body." As regards the eastern part of his farm the testator devised the same at the death of his (the testator's) wife to Andrew (if Andrew be then of age, and, if not so, then when he shall be thus of age) "*during his natural life*, and then to be subject to the same provisions as hereinbefore made as to all other devisees." This carries us back to the earlier provision that "all the foregoing devises to the several devisees as named are to be to them *for their natural lives*, and on their decease are to go to the heirs of their bodies." Andrew was one of the devisees to whom this clause refers, and his entire devise, being both the eastern and the western portions of the home farm, was thus to be for his natural life, and on his decease was to go to the heirs of his body, i. e., to his children or issue. The testator's intention was to make certain provision for his children in the way of life estates, and for his sons-in-law and daughters-in-law in the way of curtesy and dower; but his grandchildren were made quite as much the objects of his bounty as the persons just named. The provision that, if any devisee died leaving no heirs of his body (children, issue), such devisee's portion should go over to the devisees still living or their heirs per stirpes, to be equally divided, betrays a purpose not only to dispose of his whole estate, but, consistently with what has just been said, to care for both his children and grandchildren. He twice declared that Andrew should take a life estate only. With equal emphasis he declared that "the fee to the several tracts of land by me devised to my several children does not vest in them, but in the heirs of their bodies." It thus appears that his intent was first to secure a livelihood for his respective children during their natural lives and their respective wives and husbands; and, second, to make available on the death of each for the use of his grandchildren the lands devised to his respective children. The advantage to accrue to the grandchildren would be much greater, and his purpose thereby better accomplished, if he gave each a vested remainder instead of creating an estate tail. Each grandchild on attaining its majority could realize on its vested remainder, for such an estate may be so conveyed as to pass the title in fee (subject, of course, to the life estate), or may be levied on and sold under execution. Rhea v. Dick, 34 Ohio St. 420, 423. If, however, an estate tail was created, Andrew's children, as issue of him, the first donee in tail, would have no transferable right during his life. Harkness v. Corning, 24 Ohio St. 416, 427.

The creation of a life estate in the testator's children is inconsistent with an entailment. When a life estate is created, the fee is vested in the remainderman and not in the life tenant. When an estate tail is created, the fee is vested by the grant or devise in the first taker, the first donee in tail, and a fee simple is taken at his death by operation of law (section 8622) by the immediate heirs of his body. Section 10578, G. C. Ohio, first enacted in 1840, abolishes the rule in Shelley's

Case (for a statement of which see Brockschmidt v. Archer, 64 Ohio St. 512, 60 N. E. 623). It gave to the words "for his life" or "for his natural life" their natural effect, and made the first taker a life tenant. It changed the word "heirs" from a word of limitation to a word of purchase. By virtue of such statute they take not by descent, but as devisees. The 158-acre farm being devised to Andrew for his natural life, and the will expressly declaring that the fee shall not vest in him, but in the heirs of his body (children or issue), such children as a class of devisees, and not as heirs generally, take as remaindermen under the will, and not by descent from Andrew as a life tenant, because he has nothing to transmit. To hold that Andrew took a fee simple is to read out of the will the express provisions that he shall have but a life estate, the declaration that the fee is to vest in the testator's grandchildren, and his manifest intention to make his estate available to such grandchildren to some degree, at least, at the earliest practicable date. To interpret the words "heirs of his body" as designating a class of devisees is not to ignore those words. Against the theory of an estate tail is not only the presumption against an intent to create such (which presumption is strengthened by an avowed intent to vest the fee in his grandchildren), but also the repeated declaration of a purpose to give a life estate to Andrew.

[9] It is urged that, if Andrew did not take a fee simple, the title to the premises in question was in abeyance for want of a person or persons in whom to vest. This contention is unsound. In Gilpin v. Williams, 25 Ohio St. 283, decided by one of the ablest Judges that ever adorned Ohio's Supreme Bench, it appears that the testator gave to his daughter, Euretta Williams, "during her natural life, and to her children after her death, forever, one undivided eighth part" of his estate. She was then single and childless. She subsequently married, but died without children. McIlvaine, J., at page 295, employed this language:

"The right by means of which the real owner of the fee will eventually come into possession of this property as an estate of inheritance is vested in some person or persons awaiting the event which will unite the right of property and the right of possession in the same person or persons. We do not believe it is in abeyance or that it rests in nubibus. It is clear that it is not in Euretta—her only title is to an estate for her natural life; nor in her children—she has none. * * * The fee-simple title was in the testator until his death, and, if it did not pass by his will to any devisee therein named, it either ceased to exist in any one, or it passed by way of descent to his heirs at law. In our opinion it descended to the heirs, subject, however, to be divested, by force of the will, in the event that Euretta shall die leaving children; but subsisting in the meantime in the heirs, for the purpose of drawing the possession to them in the event of her death without children."

The will did not use the words "heirs of her body," but the words "to her children"; but, as the words "heirs of their bodies" employed in the Harrison Youtsey will mean none other than "children" of the devisees who took a life estate, the rule in the Gilpin Case is directly in point. The fee in the premises here in question vested at the death of the testator in his heirs, subject, however, to be divested when a

child was born to Andrew, and to open up from time to time for the benefit of his other children as they were respectively born.

By the terms of the will considered in Craig v. Rowland, 10 App. D. C. 402, there was devised to a mother and her unmarried childless son certain real estate, with the provision that, if the son thereafter married and died leaving lawful issue, or lawful descendants of such children, such issue or descendants, if in being at the time of the death of both mother and son, should take such real estate in fee simple; but if the son should die without having married, and without lawful issue surviving him, the premises should go to the testator's right heirs. Following the death of the testator the son married and had children. The situation was such as to make the rule announced in that case applicable here. It was held that the remainder, limited to the children or descendants of the son, became a vested remainder in fee simple in the first child born to the son or that came into being and capable to take, and did not wait for the death of the father; and this remainder thus vested was subject to open and let in the after-born children. Neither in that case nor in Carver v. Jackson, 4 Pet. 1, 90, 91, 92, 7 L. Ed. 761, did the court have any difficulty about the title being held in abeyance.

In Doe v. Considine, 6 Wall. 458, at page 477 (18 L. Ed. 869), a case which arose in and involved land in this judicial district, and has therefore all the force of an Ohio authority, Mr. Justice Swayne quoted Chancellor Kent with approval to the point that—

"A. devises to B. for life, remainder to his children, but, if he dies without leaving children remainder over, both the remainders are contingent; but if B. afterward marries and has a child, the remainder becomes vested in that child, subject to open and let in unborn children, and the remainders over are gone forever. The remainder becomes a vested remainder in fee in the child as soon as the child is born, and does not wait for the parent's death, and, if the child dies in the lifetime of the parent, the vested estate in remainder descends to his heirs."

He quoted, as I do, the above language on account of its appositeness to the case under consideration. He cited Jeffers v. Lampson, 10 Ohio St. 101, as in harmony with the above-quoted passage.

Having learned that the Harrison Youtsey will had been construed by the court of common pleas of Miami county, and by two of the state courts of appeals, counsel, at my instance, furnished for my assistance such of the opinions and records as are available. It is gratifying to know that the seven state judges who have had the will under consideration, although not stating their views in extenso, all reached the same conclusion as that at which I have arrived after an independent investigation. When Andrew's daughter Sarah K. was born she took a vested remainder in the 158-acre tract, which opened up, as his other three children were born, to let them in. Harrison Youtsey's heirs at law at her birth, under the rule announced in Gilpin v. Williams, became divested of the fee to said premises, the fee then passing to her. On November 22, 1902, for a valuable consideration, she conveyed her interest in the farm by deed of warranty to her father. His mother, on or about the same date, conveyed to him her life estate in the premises. As he already owned the life estate, by his daughter's deed for

her one-fourth interest in remainder he became vested with an undivided one-fourth interest in fee in the premises. On November 25, 1902, he instituted in the common pleas court of Miami county proceedings against his three remaining children to partition the farm, all of whom were properly brought before the court, and were represented by a guardian ad litem, who answered for each of them. The averments of his petition that he was seized in fee of the one-fourth part, and had a life estate in the one-fourth portion held by each of his three minor children, Hattie M., George R., and Earl, were adjudged to be true. He was held entitled to partition. Commissioners were appointed to make partition, with the direction that, if they should find such to be impracticable, they make a just valuation of the property and return it to the court. The commissioners, being unable to divide the property by metes and bounds, appraised it at $12,324. Thereupon the premises were, by proceedings duly had in accordance with the Ohio statute, sold, Andrew being the purchaser. He received from the sheriff on January 7, 1903, a deed in fee simple for the entire tract. All of the proceedings relating to the sale were by appropriate action confirmed by the court.

On January 7, 1903, Andrew was duly appointed guardian of his three minor children, Hattie, George R., and Earl, by the probate court of Miami county, duly qualified as such, and entered upon the discharge of his duties. When Hattie and George R., respectively, became of age, they each receipted to their father as guardian for the funds belonging to them, respectively, in his possession. Such funds represented the proceeds arising from the sale in the partition proceedings of their respective interests in the 158-acre tract. Each also executed and delivered a deed to the father for the premises.

[10-12] Andrew could maintain proceedings in partition. Morgan v. Staley, 11 Ohio, 389; Tabler v. Wiseman, 2 Ohio St. 207, 214, 215. So long as the partition decree remains in force his children are divested of title and he is invested with it. Dabney v. Manning, 3 Ohio, 321, 326, 17 Am. Dec. 597; Williams v. Haller, 13 Ohio, N. P. (N. S.) 350, 351, and cases cited. Two of his children, on respectively arriving at full age, ratified the partition proceedings by receipting to their guardian for and appropriating the proceeds of the sale in so far as the same belonged to them, with full knowledge of the facts, and thus estopped themselves in equity from taking advantage of a mere irregularity, if there was such, in the proceedings. Bohart v. Atkinson, 14 Ohio, 228, 239, 240. In Tabler v. Wiseman it was said by Judge Ranney at page 216 of 2 Ohio St.:

"A party ought not to be permitted voluntarily to take the benefit of a judgment and then attempt to reverse it. No more direct affirmance of the validity of the proceeding [in partition] could be made than by claiming title to the money of the adverse party received in pursuance of it."

[13, 14] Other cases in point as to estoppel by the acceptance of the proceeds of sale or by conduct amounting to a ratification are Wisby v. Bonte, 19 Ohio St. 238; Piatt v. Hubbell, 5 Ohio, 243; Rice v. Smith, 14 Mass. 431. Jurisdiction of the proceeding in partition was entertained by the state court. Those proceedings were

judicial, and cannot be collaterally impeached in the absence of fraud. Bohart v. Atkinson, 14 Ohio, 228, 239. No attack has ever been made on them. In Black on Judgments, § 660, it is said:

"The action of partition forms no exception to the general rule that a judgment is conclusive of every matter which is actually and necessarily involved in its determination. And hence, if the title of the property comes in issue, it is bound by the judgment. And now, in most of the American states, partition has ceased to be regarded as a mere possessory action, and has come to involve the right of property as well as the possession; and in such cases the judgment is conclusive upon every right or title which either of the parties present, or might have put in issue, in the litigation."

The same rule prevails in Ohio, as will appear from cases cited in support of the above-quoted text, and from Dabney v. Manning, 3 Ohio, 321, 325 (17 Am. Dec. 597), in which it was ruled that—

"The proceedings and judgments of the courts, in a petition for partition, must, like judicial proceedings in all other cases, bind both parties and privies, while they remain unreversed, however erroneously they may have been conducted.

"In this case the court of common pleas clearly was invested with jurisdiction over the subject and between the parties. Whether such interest descended to the heirs of Dabney, as entitled one of them to demand partition, was a judicial question, which that court were competent to decide. It naturally arose in the cause, and the decision of it concluded all concerned until reversed. The adjudication upon every other fact in the cause was of the same character."

See, also, Landon v. Payne, 41 Ohio St. 303. It follows that by virtue of the partition proceedings Andrew became vested with the title to the premises in question as against all of his children. By the terms of the will, if Andrew should die leaving no heirs of his body, then the devise to him and his children is "to revert back" and to be divided equally between the testator's living children or their heirs per stirpes. Considering Andrew's age and the number of his grandchildren by his daughter Hattie and his son George R., the possibility of the property passing over to Andrew's brothers and sisters or their heirs is a negligible quantity.

[15, 16] Allusion has been made to the court's request that counsel procure the rulings of the state courts for its consideration in the study of the present case. They submitted the records of the cases in both the common pleas court and the court of appeals of the second circuit, brought by Andrew S. Youtsey and wife against his daughter Hattie and his sons George R. and Earl. His daughter Sarah K. had theretofore died. The petition was filed in 1913, and sets up the Harrison Youtsey will, that the plaintiffs are in possession of the 158-acre tract, that the defendants are giving out reports that the plaintiffs have but a life estate, and that they own the remainder in fee, and the prayer is that the will may be construed, and that plaintiffs be adjudged and granted all relief to which they may be entitled in law and equity. The defendants were all duly served with summons. A guardian ad litem was appointed for Earl, who alone answered, admitting the provisions of the will, and denying all the other allegations of the petition, but further alleging that the will is plain, certain, and unambiguous, and that by its terms the plaintiffs

own but a life estate, and that the fee is in him and his brother and sister. His prayer was for a dismissal of the petition and for such other and further relief as he might be entitled to. The excellent opinion of the judge of the court of common pleas shows that the only question considered by him was the 'construction of the will. The final decree found Andrew S. Youtsey to have a life estate only. The opinion rendered by the court of appeals states that the action involves "the construction of the last will and testament of Harrison Youtsey, deceased"; that the plaintiffs claim a fee-simple interest under such will, and seek to have their title quieted. It then recites that the particular question is whether the plaintiffs take a fee-simple or only a life estate in the property devised. The trial court was affirmed. Andrew did not appeal from or prosecute error to the judgment rendered by the court of appeals. The decree so rendered against him at first appeared troublesome. The prior proceedings in partition were neither pleaded nor brought to the attention of either of the state courts. In the present case the proceedings in the action to quiet title have not been pleaded. The matter set up in such action was not, therefore, the same as that pleaded here. The rule is that, if a party relies on the record of a former adjudication of the same matter set up in answer as an estoppel, he should plead such former judgment. Such record is not admissible in evidence under a general or special denial of new matter contained in an answer. Fanning v. Insurance Co., 37 Ohio St. 344; Meiss v. Gill, 44 Ohio St. 253, 258, 6 N. E. 656. The last-named case, at page 258 of 44 Ohio St., at page 658 of 6 N. E., cites with approval Lockwood v. Wildman, 13 Ohio, 450, to the point that "a former decree, to be a bar, even when well pleaded, or set up by way of answer, must be such as shows that the rights of complainants, now set up, have been already conclusively determined." Again on page 259 of 44 Ohio St., on page 658 of 6 N. E., it is said: "And when a judgment is not pleaded, and could have been pleaded, 'in evidence,' such a judgment is not conclusive to estop a party from proving the truth of a fact in dispute." It was further declared in that case on page 260 of 44 Ohio St., on page 659 of 6 N. E., approving an Indiana ruling, that—

"To render a former recovery an estoppel to a subsequent suit, embracing the same matter in controversy with the first, the judgment must be specially pleaded. * * * If it be not so pleaded, and the defendant rely on the general issue, the former judgment is admissible in evidence, but it is not a conclusive bar to the action; the jury may still find for the plaintiff, if they think him entitled to recover."

In Porter v. Wagner, 36 Ohio St. 471, 474, Judge White said:

"The question is not what the court might have decided in the former action between the parties, but what the court did in fact decide, as shown by the record. * * * The system of pleading under the Code does not affect the question. Since the adoption of the Code, as well as before, the question in each case is, what was adjudicated in the former suit? In answering this question, reference must be had, of course, to the pleadings as well as to the judgment or decree."

See, also, Railroad Co. v. Hoffhines, 46 Ohio St. 643, 647, 648, 22 N. E. 871. What the state courts decided, and all that they decided,

260 F.—28

was, if we may consider the record, that under the will of his father Andrew took but a life estate and his children a remainder in fee. The rights of Andrew under the deed from his daughter Sarah K., and acquired by the partition proceedings which are now set up, were not before the state courts and were not determined. The judgments of those courts, not being pleaded, are not admissible in evidence, and, if they were so, would not be conclusive to estop the trustee in bankruptcy from proving what the title of Andrew actually is.

A decree may be entered in accordance with the foregoing, finding Andrew possessed of a fee simple in the premises in question.